WATSON TYSON ET AL., APPELLANTS, V. WASHINGTON
COUNTY ET AL., APPELLEES.

FILED JANUARY 17, 1907.   No. 14,600.

1. Constitutional Law: GOVERNMENTAL POWERS.  The division of pow-
ers between the several branches of the state government, made
by article II of the constitution, is comprehensive and final, and
the legislature can neither add to nor subtract from the classes
or character of questions with which the courts are entitled to
deal.

2. ――――: ――――: DRAINS.  Whether a drainage ditch proposed to
be constructed pursuant to article I, ch. 89, Comp. St. 1905, will
be conducive to the public health, convenience or welfare, or
whether the route thereof is practicable, are questions of gov-
ernmental or administrative policy, and are not of judicial cog-
nizance, and jurisdiction over them by appeal or otherwise can-
not be conferred upon the courts by statute.

APPEAL from the district court for Washington county:
WILLIS G. SEARS, JUDGE.  *Affirmed.*

*W. C. Walton* and *Frank Dolezal*, for appellants.

*E. B. Carrigan, John C. Wharton* and *Herman Aye,*
contra.

AMES, C.

Certain citizens of Washington county filed a petition
with the county board, praying for the construction of a
drainage ditch under the provisions of article I, ch. 89,
Comp. St.  Appellants filed a remonstrance or objection
to the proposed drain on the grounds: First, the ditch will
not be conducive to the public health, convenience or wel-
fare; second, the route is not practicable; and, third, suffi-
cient outlet is not provided for the ditch.  The board over-
ruled the remonstrance, and entered an order of record
to the effect that the proposed improvement will be con-
ducive to the public health, convenience and welfare; that
the proposed route is practicable; and that sufficient out-

let is provided. Remonstrants filed a notice of appeal, gave bond, and brought the case before the district court. Appellees filed a motion to dismiss the appeal, because said order of the county board is not judicial, is final, and is not appealable. The district court sustained the motion and dismissed the appeal. Appellants present for our determination the sole question of whether an appeal lies from such final order and decision of the county board.

Sections 15 and 16 of article I of the statute above cited are as follows:

Section 15. "Any person or corporation feeling aggrieved thereby may appeal to the district court within and for the proper county from any final order or judgment of the commissioners made in the proceedings and entered upon their journal determining either of the following matters, to wit: First, Whether said ditch will be conducive to the public health, convenience, or welfare. Second. Whether the route thereof is practicable. Third. The compensation for land appropriated. Fourth. The damage claimed to property affected by the improvement, which appeal may be taken and prosecuted in the manner provided by law for appeals from the decision of the county board on claims against the county."

Section 16. "No appeal taken in pursuance of the provisions of section fifteen shall in any manner affect the progress of the construction of the proposed improvement; provided, the petitioners shall enter into a good and sufficient bond to be approved by the said district court as (or) by the judge thereof at chambers, and filed with the clerk of said court, conditioned for the payment of all damages and costs that the appellant may sustain on the trial of said appeal."

Just what the legislature intended should be accomplished by such a proceeding, with reference to the first two numbered subdivisions of section 15, it is dificult, if not impossible, to say; for, manifestly, during the pendency of the appeal the county board, in the exercise of the authority expressly granted to them, or rather in the performance

of the duty expressly imposed upon them by section 16, might, and probably would, proceed with and complete the construction of the proposed ditch, so that, before a judicial determination could be reached, all the remaining provisions of the statute would have been complied with, the necessary public expenditures incurred, and the contemplated public work irrevocably established. In such a case no function would be left to the courts, in these regards, except an impotent expression of approval or disapproval of the official conduct of a local board, concerning which the judges could have, at the best, but very limited and imperfect information. It does not appear to us that the legislature can require of the courts the performance of a so futile, not to say ridiculous, task. We conjecture that the remarkable provisions of these two sections are due to the fact that the draughtsman of the statute had in mind the impracticability, if not impossibility, of requiring of the courts the making of investigations and determinations which are in their nature as far as possible from the exercise of judicial functions, and of withdrawing the exercise of local political and administrative matters to the final decision of distant and illy qualified tribunals. Such a system would savor more of centralization and bureaucracy that a democratic local self-government, and would be much more easily adaptable to a Russian autocracy than to a free American commonwealth.

Article II of the constitution of this state is as follows: "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." In recent years the courts of sister states have been particularly zealous in giving effect to the foregoing principle, whether the same has been explicitly stated in the constitutions of their states or not. Thus in the Connecticut constitution there is no such express provision, but in *Norwalk Street R.*

*Co.'s Appeal,* 69 Conn. 576, 39 L. R. A. 794, the court held
that the principle "is fundamental to the very existence of
constitutional government as established in the United
States." The precise proposition involved in that case
arose in this way: A corporation that had been created,
known as the Norwalk Street Railway Company, had
applied, pursuant to a statute of the state, to the mayor
and council of the city for an approval of its route and
plans of construction in and over certain of the streets
of the city, and for permission to construct and maintain
its proposed road, and had met with refusal. Pursuant to
another statute, assuming to confer express authority for
such a proceeding, the company appealed to the circuit
court for the county, which entertained the appeal, and
accepted and adopted the proposed plan, and entered an
order assuming to authorize the construction of the road.
The mayor and council appealed to the supreme court of
errors, which reversed the decision and dismissed the pro-
ceeding. The nature of the proposition of law involved is
stated by the court in the beginning of the opinion, as
follows: "The act of 1893 confers upon city councils cer-
tain powers in establishing regulations for the location,
construction and operation of street railways; and requires
a council, if requested by a railway company, to take some
action within sixty days, and to notify the company in
writing of its action. Whenever a council fails to give
such written notice, the act of 1895 confers the same
powers upon the 'superior court or any judge thereof,' to
be exercised on application of a railway company, and calls
this application an 'appeal.' The power so conferred on
the court is described in the act of 1893 as the power to
approve and adopt a location and layout of a street rail-
way, with such modifications therein as shall seem proper,
in respect to the streets to be occupied, the location of the
same as to grade and to the center line of the streets, and
changes to be made in the street, the kind and quality of
the track to be used, the motive power to be used, and the
method of applying the same. Can such powers be con-

ferred on the superior court? The limitation of their exer-
cise to cases where there has been a prior failure of the
municipal board to act, cannot affect the principle in-
volved. If the legislature can confer the power in a
limited class of cases, by calling an original application for
its exercise an 'appeal,' it can confer the power in all
cases without limitation." The opinion is long and elabo-
rate, citing a large number of authorities, and discussing
at length the principles of constitutional law involved,
and arrives at the conclusion expressed in the syllabus as
follows: "The incapacity of the legislature to execute a
power which is essentially and merely a judicial power,
and of the judiciary to execute a power which is essentially
and merely a legislative power, as well as the limitation
of the meaning of legislative power by force of certain
primary principles of government fairly embodied in the
constitution, and by the necessities involved in the sepa-
ration and independence of distinct departments of gov-
ernment, is fundamental to the very existence of consti-
tutional government as established in the United States."
*Norwalk Street R. Co.'s Appeal,* 39 L. R. A. 794.

In 1898 the legislature of the state of Kansas passed an
act "creating a court of visitation, declaring its jurisdic-
tion and powers and providing for proceedings and pro-
cedure thereon," and assuming to confer upon such court
jurisdiction, upon the complaint of a law officer of the
state, to inquire into the reasonableness of railway rates,
and the sufficiency of train service, and a large number of
other matters pertaining to the maintenance and oper-
ation of railroads, and to enforce its findings by judicial
decrees in like manner as other courts determine other
issues in ordinary actions. The Kansas constitution con-
tains no express provision such as that above quoted from
our own, but the supreme court held the act to be void, as
an attempt to confuse judicial and legislative powers and
to confer both on the same tribunal. Discussing the under-
lying principle involved the court say: "The framers of
the constitution of the United States were influenced by

the doctrine of Montesquieu, then in the height of his
influence, that the powers essential to governments should
be distributed among three separate bodies of magistrates,
viz., legislative, executive, and judicial.  Madison, in No. 47
of the Federalist, p. 375, affirmed that such doctrine was
recognized by the convention as the foundation of its
labors.   Montesquieu wrote: 'There can be no liberty
*   *   *   if the power of judging be not separated from
the legislative and executive powers.   *   *   *   Were the
power of judging joined with the legislative, the life and
liberty of the subject would be exposed to arbitrary con-
trol, for the judge would then be the legislator.   Were it
joined to the executive power, the judge might behave with
all the violence of an oppressor.' "   *State v. Johnson,* 61
Kan. 803, 49 L. R. A. 665.

In *State v. Barker,* 57 L. R. A. 244, 116 Ia. 96, the
supreme court of Iowa held that a statute assuming to
confer upon one of the constitutionally constituted courts
power to appoint trustees for a water supply system for
the city of Sioux City was void, saying in the syllabi:
"The establishment and control of a water supply system
is a matter that pertains to the municipality, and the
legislature cannot take the management of the system away
from the appointees of the municipality, and vest it in
persons for whose selection it provides.   The power of
choosing the managers of a municipal water supply system
cannot be vested by the legislature in the judges of a
court created by the constitution."   The body of the
opinion quotes substantially the above copied excerpt from
the opinion of the supreme court of Kansas, and holds
that "powers not in themselves judicial, and that are not
to be exercised in the discharge of the functions of the
judicial department, cannot be conferred on courts or
judges designated by the constitution as a part of the
judicial department of the state," citing a large number of
authorities, and quoting the following from Cooley, Consti-
tutional Limitations (7th ed.), p. 132:   "That which dis-
tinguishes a judicial from a legislative act is, that the one

is a determination of what the existing law is in relation to some existing thing already done or happened, while the other is a predetermination of what the law shall be for the regulation of all future cases falling under its provisions."

In *Board of Supervisors v. Todd*, 62 L. R. A. 809, 97 Md. 247, the court of appeals of that state held, quoting the syllabus: "The legislature cannot impose upon a court the duty of receiving and acting on petitions for the submission to the voters of the question whether or not intoxicating liquors shall be sold, under a constitution separating the departments of government." In the body of the opinion the court, after citing and commenting on previous decisions of that state, say: "It would seem thus to be made evident in our fundamental law that the policy and intent of that law is that the courts and judges provided for in our system shall, not only, not be required but shall not be permitted to exercise any power or to perform any trust or to assume any duty not pertaining to or connected with the administering of the judicial function; and that the exercise of any power or trust or the assumption of any public duty other than such as pertain to the exercise of the judicial function is not only without constitutional warrant but against the constitutional mandate in respect to the powers they are to exercise and the character of duties they are to discharge."

The opinions of the courts in the above cited cases comprise a thorough, complete and exceedingly able collection and review of the judicial decisions and opinions of leading text-book writers on the subject under discussion, and a present attempt at such a task would be a work of supererogation. We think they point unmistakably to the rightful disposition of this case.

The last two named subdivisions of section 15 of our statute are with respect to matters affecting the rights of individual citizens, viz., the amount of compensation to which they may become entitled for land taken for the public work, and the amount to which they may be dam-

.aged by its construction, but the two former of such subdivisions have reference to matters of purely public concern, and of legislative and administrative policy, with which the courts have not, and, in our opinion, cannot have, any concern or any duty to perform. The consensus of authority and of reason clearly is that, when the rights of a citizen are invaded or threatened by the taking of his property for a public use without just compensation, or when under the form and guise of a statutory or administrative proceeding an attempt is made or threatened to take or damage his property for a use that is not in fact in its nature public, the courts, with or without express statutory authority, may interfere for his protection. This is the precise point decided by *Lynch v. Forbes,* 161 Mass. 302, and *Chicago, R. I. & P. R. Co. v. Town of Lake,* 71 Ill. 333, cited and approved by this court in *Dodge County v. Acom,* 61 Neb, 376, which latter decision is followed and reaffirmed in *Gutschow v. Washington County,* 74 Neb. 794, 105 N. W. 548. And this, we think, is the limit of the extent to which the authorities or principles extend in permitting judicial interference in cases of this kind.

But this court has repeatedly held that the creation of drainage and irrigation districts, and construction of ditches under statutes substantially like that under discussion, are matters of governmental policy falling within the province of legislative discretion, and that such works may be performed at public expense by general tax or local assessment of especially benefited lands, or both, and may be aided by the issuance of bonds to be paid out of the general revenues of the community. We think that no authority can be found holding that the policy or expediency of constructing any such public work, the exercise of discretion as to which is vested in any administrative board or official, can, in the absence of statutory permission, be interfered with or controlled by the courts; and, if it cannot be so, the reason must be that the exercise of such discretion and functions raises no ques-

tion of judicial cognizance, because the powers exerted are political and governmental in their nature. If the powers so exerted are of such character, exercise or control over them cannot be by the legislature conferred upon the courts; and, on the other hand, whenever a judicial controversy does in fact arise, the courts have an inherent right to intervene without the permission, and even against the expressed will, of the legislature. It is entirely clear, we think, that, if the division of powers, established by the constitution and discussed by the foregoing authorities, in fact exists, the legislature are equally powerless to add to and to subtract from the classes and character of questions with which the court are entitled to deal.

Doubtless, however, it is competent for the legislature to prescribe whatever mode of procedure they may see fit for bringing judicial questions before the courts for determination, or for the multiplication of cumulative remedies, and a majority of the court are of the opinion that so much force and effect can be given to the first and second subdivisions of section 15 of the statute, *supra*, that, when it shall have been made to appear upon the face of the record that the board is attempting or threatening to proceed in usurpation or excess of powers, viz., without jurisdiction of the subject matter or in fraudulent or oppressive exercise of its authority, the court will upon appeal entertain jurisdiction of those questions, which are judicial in their nature, and will, if necessary, order issues to be made up by formal pleadings so as to present them properly for trial. These are questions which the authorities above cited, and others to be found elsewhere, have held to be judicial in their nature, and which the courts may not only be required in any appropriate proceeding to hear and decide, but which they cannot be deprived of the right and power to try and determine whenever they are brought before them in the regular course of judicial procedure. *Coen v. White*, 8 Ohio St. 228; *Bowersox v. Watson*, 20 Ohio St. 496; *Zimmerman v. Canfield*, 42 Ohio St. 463;

*Sample v. Carroll,* 132 Ind. 496; *Amoss v. Lassall,* 122 Ind. 36; *Heick v. Voight,* 110 Ind. 279; *Meranda v. Spurlin,* 100 Ind. 380; Elliott, Roads and Streets (2d ed.), secs. 276, 664.

But it follows inevitably from what has been said that, when, as in this case, the record raises no question like any of those just mentioned, and none with respect to compensation for land appropriated or with reference to damage claimed for land affected, it presents nothing of merit for judicial determination, and the only judgment the court can render is one dismissing the appeal.

We are of opinion, therefore, that the apparent apprehension of the draughtsman of the statute that the courts are incompetent to decide whether a proposed ditch "will be conducive to the public health, convenience or welfare, or whether the route thereof is practicable," was well founded, and that section 15, in so far as it assumes to authorize an appeal from a decision of those questions by the county board, is inoperative and void.

For this reason, it is recommended that the judgment of the district court be affirmed.

OLDHAM and EPPERSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.