(No. 12215.—Reversed and remanded.)

THE STATE PUBLIC UTILITIES COMMISSION *ex rel.* The Chicago Board of Trade, Appellee, *vs.* THE TOLEDO, ST. LOUIS AND WESTERN RAILROAD COMPANY, Appellant.

*Opinion filed February 20, 1919.*

1. PUBLIC UTILITIES—*proof must show that public convenience and necessity demand through route and joint rate fixed by commission.* Under the Public Utilities act an order of the Public Utilities Commission establishing a through route and joint rate on connecting lines of railroads must find, and the proof must show, that the public convenience and necessity demand the order, either because the rate charged is unjust, unreasonable or excessive or because there is no satisfactory through route or joint rate.

2. SAME—*findings of the commission are conclusive on courts unless against the evidence.* The findings of the Public Utilities Commission have the force and effect of reports of special masters in courts of equity and are conclusive on the courts unless manifestly against the evidence, in which case they may be set aside.

3. SAME—*convenience or necessity must concern the public as distinguished from individuals.* The existence of a public necessity or convenience is not necessarily determined by the number of people asking for it, but the convenience or necessity must concern the public as distinguished from the individual or any number of individuals.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

WALTER A. EVERSMAN, and WILSON, WARREN & CHILD, (CHAS. A. SCHMETTAU, of counsel,) for appellant.

JEFFERY, CAMPBELL & CLARK, (JAMES CLARKE JEFFERY, of counsel,) for appellee.

EDWARD J. BRUNDAGE, Attorney General, GEORGE T. BUCKINGHAM, WILLIAM E. TRAUTMANN, ALBERT D. RODENBERG, and MATTHEW MILLS, for the State Public Utilities Commission.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

The board of trade of the city of Chicago filed a complaint with the Public Utilities Commission on June 24, 1915, in which it charged that the rates of the Toledo, St. Louis and Western Railroad Company for the transportation of grain in car-load lots to Chicago from stations located on its road from Humrick to Horseshoe Lake, Illinois, were unjust, unreasonable and excessive, and that said railroad company had no intra-State through route between said points and Chicago and had no joint through rates in force. The commission heard evidence and entered an order that the Toledo, St. Louis and Western Railroad Company, in connection with the Chicago and Alton Railroad Company, the Chicago and Eastern Illinois Railroad Company, the Chicago, Burlington and Quincy Railroad Company, the Chicago, Terre Haute and Southeastern Railway Company, the Cincinnati, Hamilton and Dayton Railway Company, the Illinois Central Railway Company and the Wabash Railroad Company, be required to establish and put into effect joint rates for all grain moving in carload lots from all points mentioned on the appellant's line to the city of Chicago. The Toledo, St. Louis and Western Railroad Company appealed from said order to the circuit court of Sangamon county. That court affirmed the order of the commission, and from that judgment this appeal is prosecuted.

Appellant's railroad line runs from Toledo, Ohio, southwesterly through central Illinois to East St. Louis. Humrick is the first station on that road west of the boundary line between Indiana and Illinois. Horseshoe Lake is near East St. Louis. From 1908 until 1914 the appellant maintained an intra-State through route and joint rate on carload shipments of grain to Chicago on all stations on its road from Humrick to Cowden. The through route was

by way of Cowden over the Baltimore and Ohio Southwestern to Springfield and from thence over the Chicago and Alton to Chicago, and the joint rate was seven cents per hundred pounds. In 1914 this intra-State through route and joint rate were discontinued by appellant. At the time this complaint was filed no intra-State through route or joint rate was furnished to Chicago by appellant. The rate to Chicago by direct intra-State through route, should grain be shipped to Chicago, was the sum of the respective rates of the railroads over which it was transported. Appellant, however, at that time furnished an inter-State through route to Chicago by way of Linden and Frankfort, Indiana, with an inter-State joint rate of approximately nine cents per one hundred pounds for stations from Humrick to Neoga, inclusive, and from Trowbridge to Horseshoe Lake, inclusive, a rate of ten cents per hundred pounds. The sum of the separate rates over any direct intra-State route from points on appellant's road to Chicago was from one-tenth to seven-tenths of a cent per one hundred pounds less than the inter-State joint rate aforesaid. The joint intra-State rates proposed by complainant, and which were ordered by the commission, are seven cents per one hundred pounds for stations from Humrick to Neoga, inclusive, and eight cents per hundred pounds from Trowbridge to Horseshoe Lake, inclusive, to Chicago. The intra-State through routes established by the order of the commission are none of them less than three-road hauls and some of them would be four-road hauls. A large portion of the grain reaching Chicago from Illinois points is re-shipped to the east. If grain delivered to appellant at Neoga is consigned to Chicago for ultimate delivery to New York appellant would be deprived of the long haul. The establishment of the seven and eight cent joint rates to Chicago has the effect to cause appellant to furnish a lower rate to Chicago than it now has to primary markets, such as Indianapolis, and the distance to Indianapolis is considerably less than the

distance to Chicago. It gives Chicago a decided advantage over other markets and will have the effect of taking grain shipments off appellant's line.

Appellant's contention is that the commission was without jurisdiction to make the order establishing through routes and joint rates because there is no evidence in the record showing or tending to show that the public convenience or necessity demands the establishing of through routes and joint rates, and because there is no finding by the commission that public convenience and necessity demand the establishing of through routes and joint rates. Appellee insists that where the sum of the rates on appellant's line and its connecting lines to Chicago is found to be unreasonable, it is unnecessary to show a public convenience or necessity before the commission may make such an order as was entered in this case. The proper conclusion must necessarily result from the correct construction of section 42 of the Public Utilities act, which, so far as material in this case, reads as follows: "Whenever the commission, after a hearing had upon its own motion or upon complaint, shall find that the rates or other charges, or classifications in force over two or more common carriers, between any two points in this State, are unjust, unreasonable or excessive, or that no satisfactory through route or joint rate or other charge, or classification exists between such points, and that the public convenience and necessity demand the establishment of a through route and joint rate or other charge, or classification between such points, the commission may order such common carriers to establish such through route and may establish and fix a joint rate or other charge, or classification which will be just and reasonable, to be followed, charged, enforced, demanded and collected in the future, and the terms and conditions under which such through route shall be operated."

It is manifest that the legislature intended that the proof should show and that the commission should find

that the public convenience and necessity demanded, before the commission is authorized to establish, a through route and joint rate, either because the rate charged is unjust, unreasonable or excessive or because there is no satisfactory through route or joint rate in existence. Even though the rate charged is unreasonable, if no public necessity or convenience is served there would be no occasion for calling into operation the powers delegated to the Public Utilities Commission to establish a joint rate or through route. Although a rate from the points on appellant's road to Chicago on cotton might be fixed at a grossly excessive rate, the commission would certainly not be called upon to establish a reasonable rate where no cotton is produced or shipped on that road. If the stations on appellant's road have a direct route to Chicago over some other road and the service over such other road is adequate to meet the public requirements, then there should certainly be no necessity for the exercise of the powers of the commission to establish a joint rate or through route. In the case of *Washington* v. *Fairchild*, 224 U. S. 510, it was held that before the Railroad Commission of Washington had authority to enter an order against certain railroads to form switch connections between them for the convenience of shippers, at large cost, it was necessary that there be a showing before the commission that public necessity and convenience required the making of such connections. The Supreme Court of the United States in that case said: "There is no evidence of inadequate service, no proof of public complaint or of a public demand, and no testimony that any freight had been offered in the past for shipment between the points named or that any such freight would be offered in the future; nor was there any evidence whatever as to the volume of freight that would use these tracks, or that the saving in freight and time to the shipper would justify the admitted expense to the carrier." The court reversed the case upon such showing, one of the principal

grounds being that the record did not show a public convenience and necessity. The record in this case is likewise lacking in evidence of inadequate service, and no proof was made that any such freight was ever offered between such points for shipment or that any such freight would be offered. There was no sort of showing that the points named on appellant's line did not have other direct lines or routes to Chicago, with adequate facilities for hauling all grain and other commodities direct to Chicago.

Appellee contends that if it be determined that it is necessary to prove the existence of public necessity and convenience there is evidence in the record to sustain the order. The only evidence in the record referred to by appellee as establishing those facts is the order made by the commission in this case, and it is directly challenged and sought to be set aside on this appeal because not supported by evidence. Such an order, when directly attacked on appeal, cannot stand unless there is some competent evidence in the record forming a substantial basis for the order. The findings of the Public Utilities Commission have the force and effect of reports of special masters in courts of equity and are conclusive on the courts unless manifestly against the evidence. (*Western Union Telegraph Co.* v. *Burlington Traction Co.* 90 Vt. 506.) If the findings of the commission are not supported by the evidence the court is authorized to set aside the order. (*State Public Utilities Com.* v. *Terminal Railroad Ass'n,* 281 Ill. 181.) While section 68 of the Public Utilities act does provide that the findings and conclusions of the commission on questions of fact shall be held *prima facie* to be true and as found by the commission, it also provides that a rule, regulation, order or decision of the commission shall not be set aside unless it clearly appears that the findings of the commission were against the manifest weight of the evidence presented to or before the commission for and against such rule, regulation, order or decision or that the same was

without the jurisdiction of the commission. In this rec-ord there is no evidence to support the jurisdictional fact that public convenience and necessity demand the establishing of through routes and joint rates, and therefore the order cannot stand.

The existence of a public necessity or convenience is not necessarily determined by the number of people asking for it. (*State* v. *Public Service Com.* 95 Wash. 376; *State Public Utilities Com.* v. *Noble,* 275 Ill. 121.) The convenience or necessity must concern the public as distinguished from the individual or any number of individuals. While the evidence is undisputed in this record that there is considerable corn raised on the eastern end of appellant's road, very little of the corn moves into Chicago. Complainant admits that its direct interest is in getting wheat into Chicago. It is also undisputed that the board of trade buys about 350,000 bushels of grain annually in Chicago, that its elevators hold about 50,000 bushels, and that a large amount of the grain coming into Chicago is for re-shipment to New York. If the primary markets in Indianapolis and other eastern cities are sufficiently in excess of the Chicago market, a cheaper rate would not change the shipment from the direct routing over appellant's line to the primary markets. If the Chicago market will derive an advantage by reason of the cheaper rate, and the only portion of the public to be benefited thereby should be the board of trade, it cannot be said that the particular individuals composing that board have interests compatible with the public. To give the board of trade an advantage over primary markets is not necessarily subserving any public convenience and necessity, but would be rather an injury to the public by centering the grain supply at one point to the disadvantage of other markets. Before the commission can be able to properly make a finding as to the public convenience and necessity all the facts and circumstances bearing upon that question should be considered, and there should be sufficient

evidence to substantially support such a finding before it can be sustained.

The judgment of the circuit court is reversed and the cause is remanded, with directions to set aside the order without prejudice to the power of the commission to entertain a new proceeding, either on complaint or on its own motion.

*Reversed and remanded, with directions.*