(No. 17171.—Judgment reversed; order set aside.)
THE SUPERIOR MOTOR BUS COMPANY, Appellant, *vs.* THE
COMMUNITY MOTOR BUS COMPANY, Appellee.

*Opinion filed February 18, 1926.*

1. PUBLIC UTILITIES—*orders of Commerce Commission must be
reasonable and not arbitrary—review.*   The Public Utilities act
does not give to the Commerce Commission such arbitrary powers
as will result in confiscation of the property of utility companies
but expressly requires that the orders of the commission shall be
lawful and reasonable and provides for a review of its orders by
the courts.

2. SAME—*when Commerce Commission should allow existing
bus line to extend its service.*   Where the evidence shows that an
existing motor bus line has been rendering satisfactory service and
is financially able to extend its line so as to reach a more distant
point on the same route, it is unreasonable and arbitrary for the
Commerce Commission to deny an application for such extension
and grant a certificate of convenience and necessity to another line
just organized to operate over the entire route, it being conceded
by all parties that there is not sufficient traffic over the route to
justify the operation of two motor bus lines.

APPEAL from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

F. J. TECKLENBURG, for appellant.

P. K. JOHNSON, and W. E. KREBS, for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

This is an appeal from the judgment of the circuit court, of St. Clair county dismissing the appeal of appellant from an order of the Illinois Commerce Commission dated June 24, 1924, granting to the Community Motor Bus Company a certificate of convenience and necessity to operate motor busses between Belleville and Nashville and intervening points while appellant was operating its line of busses over the same route under a certificate of convenience and necessity theretofore granted by the commission, and denying its application for a certificate to extend its operations eastward from Mascoutah, beyond the territory theretofore by it served between Belleville and Mascoutah, to the city of Nashville, in Washington county.

Mascoutah is ten miles east of Belleville and Nashville twenty-five miles beyond Mascoutah. Between Mascoutah and Nashville are the Okaw (or Kaskaskia) river bottom and the villages of New Memphis, Venedy, Okawville and Addieville. There are no villages between Mascoutah and Belleville. The Superior Motor Bus Company has been in operation over four years. Under one certificate from the commission it operates between Belleville and O'Fallon *via* Shiloh, under another between Belleville and Scott Field, (the government flying school,) and under another between Belleville and Mascoutah, the order for the last named certificate having been entered by the commission in July, 1922. The population of Belleville is 24,741 and of Mascoutah 2343, and the territory between is farm land, except some bottom land, and there are no coal mines, factories or other industries along said road. Prior to the hearing eight round

trips were made by the Superior Motor Bus Company daily between Belleville and Mascoutah and on Saturdays and Sundays three additional trips. In addition, the Louisville and Nashville Railroad Company had two trains for all stations between Belleville and Nashville each way and three trains additional for the larger stations, including Belleville, Mascoutah and Nashville. Before the hearing the Superior Motor Bus Company put on additional service, making twelve trips each way daily between Belleville and Mascoutah. No demand for any additional service had been made by anyone. There had never been any complaint made as to the service rendered by the Superior Motor Bus Company. The order of the Commerce Commission finds that "the Superior Company appears to have been rendering reasonably satisfactory service over its different routes." It owns six motor busses, costing over $21,000, besides a Ford touring car, all paid for, with some money in the bank. The evidence tends to show that the railroad company and one bus line between Belleville and Mascoutah, or between Belleville and Nashville, are amply sufficient to take care of the traffic between those points. One of the attorneys for the appellee at the hearing stated, "The Community Bus Company agrees that there is probably not enough business throughout this route to justify two motor bus companies," and asked to have that statement made a part of the record.

. It is contended by appellant that the finding of the commission that the Community Motor Bus Company had built up a financial structure that justified the commission in finding that it was in a position to become a permanent part of the transportation system in the territory under consideration is without any reasonable evidence to support it and is an arbitrary finding. The promoter of the Community Motor Bus Company was a former stockholder and manager of appellant, whose connection with it was terminated in October, 1923. The Community Motor Bus Company

320–12

was incorporated November 1, 1923, with a capital stock of $2500, the number of shares being twenty-five, of the par value of $100 each. This stock at the time of the hearing had not been sold but was being held by the incorporators, and according to the testimony of the president of the company it was to be paid for when sold. At the time of the final hearing the company had no equipment, but arrangements for the purchase of one motor bus with a seating capacity of twenty-four, which was then being built, had been made. On this contract $800 had been paid and an agreement made to pay $1700 additional, and the balance of the purchase price ($7800) was to be secured by a chattel mortgage upon the car for twelve months. The testimony showed that more than one motor bus would be necessary to give the service required of appellee. Appellee's president testified that they had negotiated with manufacturers for the purchase of an additional motor bus; that in these negotiations they proposed to give the manufacturers a mortgage and a full-paid insurance policy made out to the manufacturer for a portion of the unpaid purchase price. Four witnesses called on behalf of appellee testified to a willingness to take stock in the company to the extent of $14,500, but none of them had in any way obligated themselves to do so. Appellant's president testified before the commission that whatever service the commission thought was needed appellant was fixed so that it could give it and that it was ready to give it. At the time of the final hearing the appellee owned a $150 taxicab and one motor bus, which was mortgaged for more than $5000, which was more than two-thirds of its value.

Appellant contends that the public convenience and necessity did not require and did not justify the granting of the right to the Community Motor Bus Company to operate busses between Belleville and Mascoutah because the Superior Motor Bus Company had served the public of those communities for over three years; that the right to carry

passengers between Mascoutah and Nashville ought, as a legal right, to have been granted to the Superior Motor Bus Company because it was a continuation of its Belleville-Mascoutah route, and it had the equipment, the money and the personnel to render the service, while the Community Motor Bus Company had neither busses nor capital; that the action of the commission in granting the right to the Community Motor Bus Company to operate a second line of busses between Belleville and Mascoutah over the route then being served by the Superior Motor Bus Company, and the action of the commission in refusing to grant a certificate to the Superior Motor Bus Company giving it the right to extend its operations and carry passengers beyond Mascoutah to Nashville and in granting appellee such certificate to carry passengers over the whole route between Nashville and Belleville, was clearly against the manifest weight of the evidence and was the result of arbitrary action. In *West Suburban Transportation Co.* v. *Chicago and West Towns Railway Co.* 309 Ill. 87, it is said: "It is not the policy of the Public Utilities act to promote competition between common carriers as a means of providing service to the public. The policy established by that act is, that through regulation of an established carrier occupying a given field and protecting it from competition it may be able to serve the public more efficiently and at a more reasonable rate than would be the case if other competing lines were authorized to serve the public in the same territory. Methods for the transportation of persons are established and operated by private capital as an investment, but as they are public utilities the State has the right to regulate them and their charges so long as such regulation is reasonable. The policy of the Public Utilities act is that existing utilities shall receive a fair measure of protection against ruinous competition." In the same case it is said: "Where one company can serve the public conveniently and efficiently it has been found from experience that to authorize a com-

peting company to serve the same territory ultimately results in requiring the public to pay more for transportation, in order that both companies may receive a fair return on the money invested and the cost of operation." In *Chicago Bus Co.* v. *Chicago Stage Co.* 287 Ill. 320, it is said: "If both companies were equally capable of rendering adequate service to the public, fairness and justice required, it seems to us, that preference should have been given appellant, in view of the time and money it had spent in developing its business and rendering adequate service to the public." In the same case it is said: "In other words, if it appeared that appellant had for months served the public efficiently and satisfactorily on the north side and that it was able to do so on the south side, to deny it a certificate and award it to the Chicago Stage Company would seem to be so arbitrary as to be unreasonable." The Public Utilities act does not give to the commission such arbitrary powers as will result in confiscation of the property of utility companies, but expressly requires that the orders of the commission shall be lawful and reasonable and provides for a review of its orders by the courts. *Public Utilities Com.* v. *Toledo, St. Louis and Western Railway Co.* 267 Ill. 93.

The evidence in the case showing that appellant had been meeting all the requirements of the public and of the commission between Belleville and Mascoutah, and that it was ready, able and willing to render efficient service to the public, and it being conceded by all parties that there was not sufficient traffic over this route to justify the operation of two motor bus lines, the action of the commission in granting a certificate of convenience and necessity to appellee was in violation of the rules laid down in the authorities cited and was unreasonable, arbitrary and confiscatory.

The order of the circuit court confirming the order of the commission is reversed and the order of the commission set aside.    *Judgment reversed and order set aside.*