## CITY OF DULUTH v. RAILROAD AND WAREHOUSE COMMISSION OF MINNESOTA AND OTHERS.[1]

May 14, 1926.

No. 25,340.

**Statute not invalid because investing courts with legislative powers.**

1. L. 1921, c. 278, § 10, does not contravene article 3 of the state Constitution by investing the courts with legislative powers.

**On appeal from commission court may not fix rate of fare.**

2. By that section, on appeal from an order of the Railroad and Warehouse Commission, the court may not fix the rate of fare; it only hears and determines upon its own judgment and upon original evidence controversies as to existing facts which bear upon the final question of whether the future rate fixed by the commission is confiscatory or fair.

Constitutional Law, 12 C. J. p. 791 n. 17; p. 893 n. 92, 93; p. 1194 n. 84; p. 1281 n. 93; p. 1282 n. 96.
Street Railroads, 36 Cyc. p. 1451 n. 81 New, 83.

Action in the district court for St. Louis county to enjoin the Railroad and Warehouse Commission from hearing and considering the petition of the Duluth Street Railway Company mentioned in the first paragraph of the opinion. The matter was heard by Magney, Grannis and Kenny, JJ., who ordered judgment in favor of defendants. The city of Duluth appealed from the judgment. Affirmed.

*John B. Richards,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Deputy Attorney General, *Ernest C. Carman,* Assistant Attorney General, and *Washburn, Bailey & Mitchell,* for respondents.

HOLT, J.

This action was brought by the city of Duluth to enjoin the Railroad and Warehouse Commission from hearing and considering the

[1]Reported in 209 N. W. 10.

petition of the Duluth Street Railway Company to value the increase in its property subsequent to the time of the previous valuation upon which the commission made its order fixing the rate of fare. The street railway company was also made a defendant. From the judgment of dismissal the city appeals.

The appeal as well as the action is based solely on the proposition that L. 1921, p. 335, c. 278, § 10, known as the Brooks-Coleman Street Railway Act, is unconstitutional, and being the keystone of the act, the whole thereof must fall upon its removal, hence the expense and labor of any proceeding under the act should be enjoined. Since we have reached the conclusion that § 10 does not infringe the Constitution, the consequences of the elimination of that section need not be considered.

Under the act any street railway company operating under a franchise from a city may, by filing a consent, become subject to all its provisions. Thereafter the company operates under an indeterminate permit, with the right of the city to acquire its property, and the Railroad and Warehouse Commission is henceforth given the exclusive power to fix rates of fare, which rates "shall be just, fair and reasonable and shall be sufficient to yield only a reasonable return on a fair value of the street railway property of the street railway within such city." § 6. At any time upon application the commission, on notice and hearing, shall determine the fair value of the street railway property and fix the rates of fare which "rates * * * shall yield * * * a reasonable return on the fair value of its railway property within such city as an operating system." §§ 8 and 9. The pertinent parts of § 10 read:

"Any city or street railway may appeal from any order, ruling or decision of the Commission duly made after hearing to the District Court of the County in which the city affected by any such order, ruling or decision is located, and said appeal shall be taken and all proceedings thereunder had as provided for by Sections 4191 to 4199, both inclusive, General Statutes of Minnesota for 1913 [§§ 4650-4658, G. S. 1923], so far as the same may be applicable. Upon such appeal the matters involved therein shall be tried and determined

by the court without a jury in the same manner as though originally commenced therein, provided that the findings and order of the commission shall be received in evidence upon such trial but the court shall in no event be bound thereby. * * * Upon any appeal the district court shall have jurisdiction of and shall try the whole matter in controversy including matters of fact as well as law, and make findings upon all material facts, and in any case involving rates or the value of the street railway property shall find and determine the fair value of such property and also what is a reasonable rate of return thereon, and shall affirm, modify or reverse any order or finding of such commission as may be required by law. The judgment or any order of such court shall be certified to said commission and the commission shall thereupon modify, reverse' or put into effect its order or findings so as to conform to the judgment, order and findings of such court."

Fixing the rate at which a public utility must render service is concededly a legislative or administrative function. Steenerson v. G. N. Ry. Co. 69 Minn. 353, 72 N. W. 713. And the contention is that § 10 above quoted invests the court, the judiciary branch of the government, with legislative powers, thereby contravening article 3 of the state Constitution. No authorities need be cited to the proposition that a duly enacted statute should not be declared unconstitutional if reasonably it may be so construed as not to contravene any provision of the Constitution.

Ernestly it is urged that in language too clear for construction the final determination of the rate is vested in the court, for the trial is de novo; the findings of the commission, though admitted in evidence, do not bind the court; the court shall try matters of fact as well as law; findings shall be made as to both the value of the property of the street railway and what is fair return thereon; and finally the commission must modify, reverse or put into effect its order so as to conform to the judgment, order and findings of the court. It however is to be noted that nowhere is the court required to fix or determine the rate. The court must make only two specific determinations of existing facts, namely, the fair value of the street

railway property and what is a present fair return thereon. To be sure both are prime factors in fixing the future rate, but there are many others, such as operating expenses, overhead, uncertainties as to patronage, and fluctuation of values bearing upon both earnings and expenses. The act upon which the Steenerson case was decided gave the court, when disposing of an appeal from the commission, seemingly greater power as a final rate fixer than does § 10 of the act here involved, the provision of the former being:

"The district court shall have jurisdiction to, and it shall, examine the whole matter in controversy, including matters of fact as well as questions of law, and to affirm, modify or reverse such order in whole or in part, as justice may require; and in case of any order being modified as aforesaid, such modified order shall, for all the purposes contemplated by this act, stand in place of the original order so modified and have the same force and effect throughout the state as the orders of said commission." G. S. 1894, § 386, subd. e and § 393, subd. d.

We have no doubt that the provisions for an appeal to the court in the act involved in the Steenerson case were in deference to the opinion of the Federal Supreme Court in C. M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 33 L. ed. 970, and that § 10 of the act here assailed was influenced by such decisions of that court as Bacon v. Rutland R. Co. 232 U. S. 134, 34 Sup. Ct. 283, 58 L. ed. 538; Detroit & M. Ry. Co. v. Michigan R. Comm. 235 U. S. 402, 35 Sup. Ct. 126, 59 L. ed. 288; and Ohio Valley W. Co. v. Ben Avon Borough, 253 U. S. 287, 40 Sup. Ct. 527, 64 L. ed. 908; in the first two of which, enactments, granting substantially the same powers and duties to the court on appeal from the rate fixed by a commission as in § 10, were held not to confer legislative functions upon the court, and in the last of which the intimation is plain that such a judicial review as is afforded by said § 10, both as to the law and the facts, is essential to a valid rate fixing. In the case last referred to the supreme court of Pennsylvania held that the superior court, to which went the appeal from the commission's order fixing rates, erred in substituting its judgment of values, of the

factors to be taken into account in fixing rates, for that of the commission in determining that the order of the latter was unreasonable.

The Federal Supreme Court said: "The order here involved prescribed a complete schedule of maximum future rates and was legislative in character. Prentis v. Atlantic Coast Line Co. 211 U. S. 210 [29 Sup. Ct. 67, 53 L. ed. 150]; Lake Erie & Western R. R. Co. v. State Public Utilities Commission, 249 U. S. 422, 424 [39 Sup. Ct. 345, 63 L. ed. 684]. In all such cases, if the owner claims confiscation of his property will result, the State must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, Fourteenth Amendment." The Pennsylvania law provided:

"At the hearing of the appeal the said court shall, upon the record certified to it by the commission, determine whether or not the order appealed from is reasonable and in conformity with law."

The Federal court expressed the view that without doubt under the quoted provision the court was authorized to act judicially and not in a legislative capacity, but as interpreted by the supreme court of the state the jurisdiction of the trial court "stopped short of what must be plainly entrusted to some court in order that there may be due process of law."

The inference is plain that, unless the state law provides complete judicial review or investigation by appeal or otherwise of a legislative or administrative rate fixed for future services to be rendered by a public utility, the rate fixed is of little validity or effect. To give standing and authority to the rate to be fixed under the act in question, the lawmakers took pains to provide not only that the commission should hear, investigate and determine the value and bearing of all the factors which go to make a fair rate for the future, but that on appeal the court shall independently on its own judgment and upon such evidence as may be adduced before it determine at least two of the main factors which enter into rate

making—the value of the property of the street railway and what is a fair return thereon.

The ultimate inquiry on the appeal from the order of the commission is whether the rate fixed by it is confiscatory or fair and reasonable. Obviously in so doing the court must determine the two prime facts referred to. Many other facts, such as the parties see fit to raise an issue about, may with propriety be considered as bearing upon the final question. It is also apparent, since an appeal lies to this court from a decision by the district court, that full findings of fact are properly made not only upon the two facts specified in the statute but upon all important factors that go to determine whether the fare fixed by the commission is in fact fair or confiscatory. It may well be that § 10 would have been as efficacious had it provided that the appeal should be heard upon the evidence taken by the commission, as did the statute in Detroit & M. Ry. Co. v. Michigan R. Comm. 235 U. S. 402, 35 Sup. Ct. 126, 59 L. ed. 288, but the additional protection does not detract nor signify that there was an attempt to invest the court with legislative functions. The due process clause is not only in the Federal but in the state Constitution, and the mandates of both require the courts of this state to protect property rights thereunder. No act of the legislature fixing a rate, nor of an administrative commission, is immune to an inquiry by the courts whether thereby the constitutional provision referred to has been violated. By § 10 that inquiry has been expressly afforded.

There can be nothing improper or savoring of extending the jurisdiction of the judiciary into the domain of any other of the three departments of the state government by requiring as full a trial and findings upon appeal from the commission's order as in an independent suit in equity brought to restrain the street railway from refusing to abide by the fare established by the commission.

Courts are strictly within their own territory when determining controversies between parties concerning past or present facts. In rate fixing for the future the parties concerned may differ as to existing facts, among others the two most important ones referred

to, and it would seem entirely proper that there be a judicial determination of the same.

Again, courts also go to the aid of the other departments of government, and when so doing the line of demarcation may not be well defined. Duluth v. Dibblee, 62 Minn. 18, 63 N. W. 1117; State v. Crosby, 92 Minn. 176, 99 N. W. 636; State v. Koochiching R. Co. 146 Minn. 87, 177 N. W. 940; In re Hull, 163 Minn. 439, 204 N. W. 534, 205 N. W. 613. In the Hull case it was said: "The courts have frequently considered the constitutional provision for the division of the powers of the government into three distinct departments. Gradually the necessity of avoiding a narrow construction has been perceived, for it has proved to be impractical to view the provision from the standpoint of a doctrinaire." Other cases than those above are therein cited.

As already stated § 10 does not in words require the court to fix the rate, but to affirm, modify or reverse any order or finding of such commission as may be required by law. If the rate be found confiscatory the court can neither fix a new rate nor modify the one under review. Its findings as to existing facts which were litigated on the appeal are binding on the commission and the matter goes back to the commission to put into effect orders or findings which conform to the action of the court. We see nothing in § 10 imposing legislative or administrative duties upon the court, or any substantial departure therein from the act involved in the Steenerson case, supra, or State v. G. N. Ry. Co. 130 Minn. 57, 153 N. W. 247, Ann. Cas. 1917B, 1201.

We are not concerned with the effect the Federal courts will give to rates fixed and reviewed as provided in the Brooks-Coleman Act. It is the duty of this court to see that the due process clause of the Federal Constitution is not violated as well as the same clause in the state Constitution. But while so doing we must recognize that our construction and application of a state rate fixing statute does in no manner hinder or preclude the Federal courts from inquiring into and determining whether or not the procedure under such statute deprives the parties concerned of property rights in

violation of the due process clause of the Federal Constitution.

Since, under a provision in the act, a street railway company before it can become subject thereto must file its consent, it is very ably and forcefully argued by the deputy attorney general, appearing for the commission, that the company thereby enters a contract with the city binding itself to accept whatever rate may be fixed in accordance with the procedure prescribed by the act. That proposition is not in the case. Holding § 10 constitutional, as we do, this suit to enjoin the valuation of after-acquired property of the street railway company, as expressly provided by the act, was properly dismissed, even though the company stand in no other relation to this act than to any general legislative act governing the procedure for rate fixing. Some of the existing street railway companies held franchises for a term of years with a rate of fare fixed therein. No doubt the provision for filing consent was inserted in the law so as to enable such companies to terminate that relation.

Several cases cited and stressed in the briefs and arguments have no direct bearing upon the main question on this appeal. In Virginia and Oklahoma the state Constitution authorizes the courts to assume legislative functions, and in the District of Columbia the Congress may impose upon the courts therein such duties as it sees fit. With that in mind the cases of Prentis v. Atlantic Coast Line Co. 211 U. S. 210, 29 Sup. Ct. 67, 53 L. ed. 150; Oklahoma Nat. Gas Co. v. Russell, 261 U. S. 290, 43 Sup. Ct. 353, 67 L. ed. 659; and Keller v. Potomac Elec. P. Co. 261 U. S. 428, 43 Sup. Ct. 445, 67 L. ed. 731, should be read and applied. The other cases, cited by appellant, such as Pacific Tel. & Tel. Co. v. Kuykendall, 265 U. S. 196, 44 Sup. Ct. 553, 68 L. ed. 975, do not give much aid, for the Supreme Court of the United States studiously avoids determining, in advance of a ruling by the highest court of the state, whether the state Constitution, separating the state government into three branches, is offended by a statute which gives to its courts the power, on an appeal from the order of a rate-fixing commission, to hear the evidence de novo and make findings upon existing disputed fact issues which determine whether the rate fixed by the commission is fair or confiscatory.

The judgment is affirmed.