IN RE APPEAL OF BEASLEY BROTHERS.

JUNE 26, 1928.

*Mowry & Jones, Parsons & Mills,* and *Bollinger & Block,* for appellants.

*Wilson & Shaw, C. R. Bennett,* and *Marion Hammer,* for Des Moines Central Iowa Motor Transportation Company.

*Dwight N. Lewis* and *Stephen Robinson,* for Board of Railroad Commissioners, appellees.

MORLING, J.—The objections filed with the commission are:

"1. That there is no necessity or demand for the service proposed by applicant. 2. That the granting of the certificate will not promote the public convenience and necessity. 3. That the bus line now operated between said towns and cities furnishes adequate service of that character. 4. That, if the proposed service is instituted, the public convenience will be seriously affected, in that the amount of business will not support the operation of such service."

In view of our conclusions upon the law, it will be sufficient to set out the evidence taken before the commission in very general outline, as follows: The interurban company is operating at a loss, and asks for the permit in part to enable it to recoup, as well as on the ground of benefit to the public. There is testimony tending to show that the interurban line is suffering from bus competition in passenger service; that it may eventually have to cease business; and that the property of the company and of other concerns built along the line and depending upon its service will suffer great losses. The Rock Island Railroad also operates between these towns, but the freight service at intermediate stations is inadequate. The ob-

jectors, Beasley Brothers, were given their permit about three years before the hearing, over the opposition of the interurban company. They have a large investment in their bus line. They have asked permission to operate another round trip a day. Most of the testimony on the subject of public necessity and convenience consists of opinions for and against. There is testimony that on a good many of the trips the busses are full; that a large number of men living in Colfax, an intermediate station, and working in Newton, complain of the difficulty of getting back and forth; that, while the Rock Island could carry all the passengers, "they will not do it. Lots do not want to go on trains. They do not want to go when the train stops." It is further testified that there is some public demand for more facilities; that Altoona is one-half mile off the bus line; that:

"They sometimes go past Altoona with such a load that they have to pass by people waiting. It happens right along that the bus is loaded so you can't put more passengers in."

There is opposing testimony, and testimony to the effect that the objectors are ready to put on extra busses and take care of the passenger traffic.

The assignments of error are that the court erred in not reversing the decision of the commission, in not holding that there was no necessity for a new motor carrier line, and "in not holding that the applicant, representing only in fact the interurban, had no more right to a franchise than a stranger."

Appellant's points are:

"1. The appellate court, under the statute, arrives at an independent judgment on the evidence, and tries the case *de novo,* and is not limited as in writ of error or certiorari.

"2. There was no showing of necessity or public convenience to warrant a finding of the commission of public convenience or necessity.

"3. Where a motor bus carrier is operating on the line without a showing of failure or inability in such carrier to properly serve the public, a competing carrier is not entitled to a permit until at least complaint is made, and opportunity to render the service afforded."

Objectors contend in argument that the result of more com-

petition will be to make all lines unprofitable, and in the end detrimental to, rather than promotive of, public welfare. Also that, acting upon their permit, they have made a large investment in their bus line, and are entitled to preference and protection.

At the outset, the question arises, What is the district court on such an appeal to determine? The statute makes no specific provision on this point, but says:

"Appeal may be taken from the decision of the commission by the applicant or any party who appeared in opposition to the application, to the district court * * * Upon appeal being taken, the secretary of the commission shall make and certify a transcript of all papers, records and proceedings in connection with such application and hearing and file the same with the clerk of said court * * * The appeal shall be submitted upon the transcript of the evidence and the record made before the commission, and the district court shall either affirm or reverse the order of the commission. An appeal may be taken from the judgment of the district court to the Supreme Court as from other judgments." Acts of the Forty-first General Assembly, Chapter 5, Section 10; Code of 1927, Chapter 252-A1.

The statute must be interpreted in the light of the Constitution. In this state, division of powers of government into three separate departments is not a matter of political philosophy, or theoretical merely. It is accomplished by the fundamental law.

"The powers of the government of Iowa shall be divided into three separate departments—the legislative, the executive, and the judicial: and no person charged with the exercise of powers belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted." Constitution of Iowa, Article 3, Section 1.

The district court is a constitutional court in which, with the Supreme Court and such inferior courts as the general assembly may establish, is vested the judicial power of the state. Constitution, Article 5, Section 1. The legislative or administrative powers of the state government can no more be conferred

upon or delegated to a constitutional court by the legislature, or be assumed by such court, than may the legislative department arrogate to itself the functions of the judiciary. In the nature of things, there is no high wall or definite line of demarcation between the different governmental departments. Necessarily they gradually merge and blend into each other. Administrative officials must, on numerous occasions, in practice (subject to review by the courts), act judicially. Occasionally administrative functions to some degree must be exercised by courts. But in the main the three classes of governmental powers are separate and distinct. See *City of Burlington v. Leebrick*, 43 Iowa 252; *Keller v. Potomac Elec. P. Co.*, 261 U. S. 428; *State ex rel. Oregon R. & N. Co. v. Fairchild*, 224 U. S. 510.

In the light of these considerations, what powers and duties on this subject are by the statute vested in the state railroad commission? The statute (Code of 1927, Chapter 252-A1, supra,) vests in the commission power and the duty to make periodic inspection of the equipment of motor carriers, to fix or approve rates, regulate and supervise accounts, schedules, service, and safety of operation, prescribe a uniform system of accounts, require reports, and "supervise and regulate motor carriers in all other matters affecting the relationship between such carriers and the traveling and shipping public." The commission is given power to prescribe rules and regulations. All its control, power, and authority over railroads and railroad companies, so far as applicable, are extended to motor carriers. It is made unlawful for any motor carrier to operate or furnish public service without first obtaining from the commission a "certificate declaring that public convenience and necessity require such operation."

"Before a certificate shall be issued, the commission shall, after a public hearing, make a finding that the service proposed to be rendered will promote the public convenience and necessity. If such finding be made, it shall be its duty to issue a certificate."

The applicant must make a satisfactory showing of financial ability.

"When the certificate is granted, the commission may at-

tach to the exercise of the rights therein conferred such terms and conditions as in its judgment the public convenience and necessity may require, which shall include the right and duty to transport newspapers."

"For just cause, the commission may at any time alter, amend, or revoke any certificate issued."

The application must contain a complete description of the proposed route and equipment and schedule of service and a financial statement. Notice of date of hearing addressed to the citizens of each county must be published therein. Anyone "whose rights or interests may be affected shall have the right to make written objections to the proposed application." The board is required to consider the application and objections, "and may hear testimony to aid it in determining the propriety of granting the application."

"It may grant the application in whole or in part upon such terms, conditions, and restrictions and with such modifications as to schedule and route as may seem to it just and proper."

It is to be noticed that, before the certificate may be issued, the commission must find that the proposed service "will promote the public convenience and necessity." In considering the application and objections, the commission "may hear testimony to aid it in determining the propriety of granting the application." This provision in terms is permissive. The statute reads, testimony "may" (not "must") be received, to aid the commission, not as the exclusive basis for fact finding, or of the ultimate determination of public convenience and necessity. See *City Council v. Eastern Mass. St. R. Co.*, 254 Mass. 42 (149 N. E. 671). The board of railroad commissioners is a public utility commission, provided with extensive facilities and instrumentalities for the performance of comprehensive and varied administrative functions. It has general supervision of all railroads in the state, express companies, car companies, sleeping car companies, freight and freight line companies, interurban railway companies, motor carriers, and any common carrier except street railroads, and also all electric transmission lines. Code of 1927, Section 7874. A franchise for the maintenance of electric transmission lines is required, and, if granted, is subject to the rules

of the board of railroad commissioners, and the board has the power of supervision over construction and maintenance. Code of 1927, Chapter 383. The commission, therefore, is concerned in the use of the highways. As a prerequisite to granting a certificate to a motor bus carrier, the board must find that the proposed service will promote the public convenience and necessity. This required determination, on its face, is not of existing facts and resultant and controverted rights and duties, which is a judicial function, but is of public convenience and necessity, requiring the formation and determination of future rights and duties, which is a legislative question. *State ex rel. White v. Barker*, 116 Iowa 96; *Denny v. Des Moines County*, 143 Iowa 466, 473 et seq.; *Hutchins v. City of Des Moines*, 176 Iowa 189; *Focht v. Board of Supervisors of Fremont County*, 145 Iowa 130; *Thompson v. Board of Supervisors*, 201 Iowa 1099; *Keller v. Potomac Elec. P. Co.*, 261 U. S. 428; *Janvrin, Petitioner*, 174 Mass. 514 (55 N. E. 381); *City Council v. Eastern Mass. St. R. Co.*, 254 Mass. 42 (149 N. E. 671); *City of Duluth v. Railroad & Warehouse Com.*, 167 Minn. 311 (209 N. W. 10); *Tenny v. Seattle Elec. Co.*, 48 Wash. 150 (92 Pac. 895); *Rolf v. Town of Hancock*, 167 Minn. 187 (208 N. W. 757); *Tyson v. Washington County*, 78 Neb. 211 (110 N. W. 634).

The power to make such determination may not be conferred upon or assumed by a constitutional court. Idem.; *City of Duluth v. Railroad & Warehouse Com.*, 167 Minn. 311 (209 N. W. 10). This is not saying that, in the course of the hearing and determination of the legislative question, the board may not be called upon to act judicially. Judicial questions may arise, such as whether the commission is acting within its constitutional or statutory powers; whether the statutory prerequisites to and the formalities for the exercise of its authority are observed and obeyed; whether the constitutional or statutory rights of the parties before it are violated; whether the commission is acting capriciously, arbitrarily, or unreasonably. Decision of these may require the investigation and determination of facts. Idem.; *New York ex rel. Woodhaven G. L. Co. v. Public Service Com.*, 269 U. S. 244; *Interstate Commerce Com. v. Illinois Cent. R. Co.*, 215 U. S. 452, 470; *Superior Motor Bus Co. v. Community Motor Bus Co.*, 320 Ill. 175 (150 N. E. 668); *State Public Utilities Com. v. Cleveland, C., C. & St. L. R. Co.*, 288 Ill. 502

(123 N. E. 547) ; *People ex rel. New York & Q. G. Co. v. Mc-Call*, 219 N. Y. 84 (113 N. E. 795) ; *Alabama Power Co. v. Alabama Public Serv. Com.,* 214 Ala. 164 (107 So. 71). .

It was undoubtedly competent for the legislature to provide for a review of judicial questions by appeal from the commission to the court. Whether the remedy so provided by appeal is exclusive; whether the appeal is to be tried by ordinary or equitable proceedings; whether the method of trial of the appeal may depend upon the question raised; the weight to be given to the commissioners' finding, and other similar or related inquiries, are not before us for adjudication.

The objections to the granting of the permit presented to the commission may be condensed into the single one that the proposed service would not promote the public convenience and necessity. As no other objection was made before the board of commissioners, no judicial question was presented which could be the subject of appeal, unless such question was otherwise developed in the progress of the hearing and determination.

The objectors' assignment of error that the applicant had no more right to a franchise than a stranger, is related to no ruling either by the commission or by the district court.

The foregoing considerations dispose of the first two points made by objectors in this court.

With respect to the third point, that a certificate to a competing carrier should not be granted until at least complaint is made and opportunity to render the service afforded to the operating carrier, we may say that the record is insufficient to show that this, as a judicial question, was presented either to the commission or to the district court, or if presented, that it was improperly ruled. Under the statutes of other jurisdictions and the rights held to result therefrom, consideration must be given to carriers already in operation, and to their investments therein. *Superior Motor Bus Co. v. Community Motor Bus Co.,* 320 Ill. 175 (150 N. E. 668) ; *Egyptian Trans. System v. Louisville & N. R. Co.,* 321 Ill. 580 (152 N. E. 510) ; *West Suburban Trans. Co. v. Chicago & W. T. R. Co.,* 309 Ill. 87, 89 (140 N. E. 56) ; *Farmers' & Merch. Co-op. Tel. Co. v. Boswell Tel. Co.,* 187 Ind. 371 (119 N. E. 513). Whether, or under what circumstances, the principle of these cases may be applicable here, we are not called upon to inquire.

As a prerequisite to granting a certificate to a motor carrier, the board must find that the proposed service will promote the public convenience and necessity. Public convenience and necessity are concerned in the operation and maintenance of existing electric railroads and in their ability to furnish the service for which they were constructed. Capital is invested in them, as well as in the equipment of motor carriers; valuable properties, such as warehouses, are built on the line of the electric railroad, in reliance upon its permanent operation.

Permission to use highways for motor bus transportation may involve inquiries into the construction, maintenance, capacity, and demand upon them. Engineering problems, cost, and revenue are involved. These matters are not only not judicial in their nature, but the courts are not equipped with facilities for, nor is their procedure adapted to, their determination. They are properly committed to an administrative board.

It is manifest from these considerations that the question presented here is one of administration, and not of disputed facts or of existing legal rights dependent on or resulting from existing facts. From what has been said, it is clear that the record does not present a case of arbitrary abuse of power. The general assembly has not undertaken to transform the court into a revisory or appellate public service commission No power to take further evidence or to try the case anew from the beginning is given to the court. No power is given to the court, or could be, to render its own independent judgment of the public convenience and necessity. It is not for the court to determine the wisdom of the commissioners' action, or to substitute its own judgment or opinion for that of the commission. *People ex rel. New York & Q. G. Co. v. McCall,* 219 N. Y. 84 (113 N. E. 795); *New England T. & T. Co. v. Department of Public Utilities* (Mass.), 159 N. E. 743; *State Public Util. Com. v. Toledo, St. L. & W. R. Co.,* 286 Ill. 582 (122 N. E. 158); *Illinois Commerce Com. v. Omphghent Township,* 326 Ill. 65 (156 N. E. 766); *Egyptian Trans. System v. Louisville & N. R. Co.,* 321 Ill. 580 (152 N. E. 510); *State ex rel. Oregon R. & N. Co. v. Fairchild,* 224 U. S. 510. It is to be observed in this connection that the only power given to the district court is to either affirm or reverse. Furthermore, we are not to be understood as holding that appearance before the commission, participation in

the hearing there, and appeal, are the exclusive remedy for one whose rights may be affected or who may be aggrieved by the commission's action, nor do we hold that the rights of complaining parties must, as against them, be determined by the record made before the commission. As has been remarked, the commission, in taking its action, is not restricted to the evidence produced before it. Its action may be determined by matters upon which complainants have had no opportunity to be heard. Compare *Boston & A. R. Co. v. New York Cent. R. Co.*, 256 Mass. 600 (153 N. E. 19). It is conceivable that, in its action, the commission may invade the rights of persons not before it, or act detrimentally to rights not disclosed on its record. Such a condition is not presented by this appeal. We are not now determining what weight is to be given to the finding of the commission in a case reviewable by the court. See *State Public Util. Com. v. Toledo, St. L. & W. R. Co.*, 286 Ill. 582 (122 N. E. 158). The case is further discussed in *In re Application of Waterloo, C. F. & N. R. Co.*, 206 Iowa 238.

As the determination of the requirements of public convenience and necessity is legislative, and not judicial in character, and as the determination now under consideration is not shown to have been arbitrary or unreasonable, or rested upon the improper determination of any judicial question of fact or law, and as the record otherwise raises no judicial question, the judgment of the district court is—*Affirmed.*

STEVENS, C. J., and EVANS, FAVILLE, DE GRAFF, ALBERT, and KINDIG, JJ., concur.

WAGNER, J., not participating.