THE STATE PUBLIC UTILITIES COMMISSION *ex rel.* ED Beck, Appellee, *vs.* THE TOLEDO, ST. LOUIS AND WESTERN RAILROAD COMPANY, Appellant.

*Opinion filed February 17, 1915.*

1. PUBLIC UTILITIES COMMISSION—*State Public Utilities Commission has power to enforce paragraph 50 of the Railroads act.* Under section 79 of the Public Utilities act, making it the duty of the State Public Utilities Commission to enforce the provisions of the constitution and the statutes affecting public utilities, where the enforcement of such provisions is not vested in some other tribunal or officer, such commission has power to enforce paragraph 50 of the general Railroads act, relating to maintaining depots in towns and villages having a population of two hundred or more.

2. RAILROADS—*paragraph 50 of Railroads act applies though village is unincorporated.* Paragraph 50 of the general Railroads act, requiring railroad companies to maintain depots in towns or villages having a population of two hundred or more, applies to a village having the required population even though it is not incorporated.

3. SAME—*count of population not limited to persons living on platted lots.* In determining the population of an unincorporated village the count is not limited to persons living on the platted lots, where all the residences in the village are in one group and there is no line of demarcation, other than that some of the residences are on platted lots while others are not.

4. SAME—*provisions of paragraph 50 of Railroads act must be enforced unless the result will be confiscatory.* The provisions of paragraph 50 of the general Railroads act relating to maintaining depots in towns and villages must be enforced by the State Public Utilities Commission unless the result of such enforcement will be confiscatory, and the burden is upon the objecting railroad company to show such result.

5. SAME—*the orders of State Public Utilities Commission must be reasonable.* The Public Utilities act does not give to the commission such arbitrary powers as will result in confiscation of the property of utility companies, but expressly requires that the orders of the commission shall be lawful and reasonable and provides for a review of its orders by the courts.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

WILSON, WARREN & CHILD, and C. E. POPE, (CHARLES A. SCHMETTAU, of counsel,) for appellant.

EVERETT JENNINGS, GEORGE M. MORGAN, and FRANCIS E. BALDWIN, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Ed Beck filed his petition with the State Public Utilities Commission to require the Toledo, St. Louis and Western Railroad Company, appellant, to maintain a depot at the village of Fancher, in Shelby county, Illinois, located on the line of appellant's railroad, with an agent in charge, and to replace the stock-loading chute which had theretofore been removed by appellant. A hearing was had before the commission and an order entered requiring appellant to maintain a station at the village of Fancher, with an agent in charge, for a period of one year, during which time an account should be kept of all receipts from freight and passenger service, which account should at the end of that time be presented to the commission as further evidence to enable it to determine whether the order should be made permanent. This order did not require appellant to provide a telegraph operator for the station or to sell tickets to passengers. The commission found that the business at Fancher did not warrant maintaining a stock chute and therefore did not require appellant to replace it. Appellant appealed from this order to the circuit court of Sangamon county, where an order was entered affirming the order of the commission. This appeal has been perfected from the order of the circuit court.

Assuming that the proceeding was had before the commission under section 51 of the Public Utilities act, appellant contends that this section is unconstitutional and void and that the order of the commission is therefore invalid. Section 51 is, in part, as follows: "Whenever the commission, after a hearing had upon its own motion or upon

complaint, shall find that any railroad or street railroad company does not run a sufficient number of trains or cars, * * * the commission shall have power to make an order directing any such railroad or street railroad company to increase the number of its trains or of its cars * * * or to make any other order that the commission may determine to be reasonably necessary to accommodate and transport the traffic, passenger or freight, transported or offered for transportation." Appellant does not question the validity of the Public Utilities act as a whole, but questions only the validity of the latter part of said section 51. We are of the opinion that this section of the act was in no way involved on this hearing. While it may have been the intention of the petitioner to invoke the powers conferred upon the commission by said section 51, it is apparent from this record that the commission did not act under that section. By the Public Utilities act the duties imposed upon the commission are varied. By section 79 it is made the duty of the commission to enforce the provisions of the constitution and the statutes of the State affecting public utilities where the enforcement of such provisions is not specifically vested in some other officer or tribunal. Paragraph 50 of chapter 114 (Hurd's Stat. 1913) is as follows: "That all railroads in this State carrying passengers or freight shall, and they are hereby required to build and maintain depots for the comfort of passengers and for the protection of shippers of freight, where such railroad companies are in the practice of receiving and delivering passengers and freight, at all towns and villages, having a population of two hundred (200) or more, on the line of their roads, and roads leased or operated by them." On the hearing before the commission it was developed that Fancher was an unincorporated village located on the line of the appellant's railroad, containing more than 215 inhabitants; that until 1907 appellant maintained a depot there but discontinued that service during that year, and that since

that time the freight and passenger trains of appellant have stopped at Fancher and received and discharged both passengers and freight. This brought appellant clearly within the provisions of said paragraph 50 of chapter 114, and it thereupon became the duty of the State Public Utilities Commission to enforce that provision of the statutes.

The appellant makes two contentions in this connection: (1) That there are less than 200 inhabitants in the village of Fancher; and (2) that Fancher, being unincorporated, was not such a village as is contemplated by the statute. The Federal census of 1910 shows that there were 215 inhabitants in the village of Fancher, and the proof in this record is that the number of inhabitants has increased since then. Appellant offered its section foreman as a witness to show that there were less than 100 people residing in the village. He testified that the number of inhabitants was 95. On cross-examination it was disclosed that he counted only those residing on platted lots whereas a considerable proportion of the inhabitants resided on lands adjoining the platted lots, although all the residences are in one group and there is no other line of demarcation except that some are on platted lots and some are not. It was clearly shown that the village contained more than 200 inhabitants. The fact that it is now an unincorporated village is not of controlling importance. It is such a village as is contemplated by the statute. (*Illinois Central Railroad Co.* v. *Williams,* 27 Ill. 48; *Toledo, Wabash and Western Railway Co.* v. *Chapin,* 66 id. 504; *Toledo, Wabash and Western Railway Co.* v. *Spangler,* 71 id. 568.) When these facts were disclosed it became the duty of the commission to require appellant to maintain a depot at Fancher unless the result of such enforcement would be confiscatory. The burden was upon the appellant to show, if such was the case, that the receipts at this point were such that the effect of requiring it to comply with the statute would be to confiscate its property. This appellant failed to do. It showed by its

comptroller that the freight receipts for the year ending December 31, 1913, were $747.15 for out-bound freight and $571.61 for in-bound freight. No proof was made of the receipts from the passenger business during that period, but the comptroller estimated that they would amount to from $25 to $50 per month. Fancher is located 2.2 miles west of Mode, where appellant maintains a depot with an agent, and 5.4 miles east of Cowden, where a depot with an agent is also maintained. Appellant delivers freight at Fancher only at the owner's risk. All freight shipped from Fancher and vicinity must be billed from Mode, and as a result a great deal of the freight the ultimate destination of which is Fancher is consigned to Mode or Cowden and from those stations hauled by wagon to Fancher, and out-going freight from Fancher is hauled to Mode and shipped from that station. The amount of this business was not shown or even estimated. The comptroller testified that the salary paid by appellant to its agent at Fancher in 1907 was $35 per month, and that now it would probably amount to from $35 to $50 per month. Appellant failed to show that the effect of the order of the commission would be confiscatory.

One of the arguments advanced in support of the contention that said section 51 is invalid is, that the commission has been delegated arbitrary powers which it may exercise regardless of the financial effect it might have upon the utility company, and that the commission is permitted to assume the functions of the executive, judicial and legislative departments of the State. To some extent this argument of appellant might be applicable to the action of the commission in enforcing compliance with said paragraph 50 of chapter 114. The commission is given no such arbitrary powers under the Public Utilities act, as that act requires that its orders must be lawful and reasonable. By section 68 it is provided that appeals may be taken from any order of the commission to the circuit court of Sangamon county for the purpose of having the reasonableness and

267 – 7

lawfulness of the order inquired into and determined, and section 69 provides for a further appeal from the final order and judgment of the circuit court to the Supreme Court. The lawfulness and reasonableness of any order made by the commission is therefore subject to review by the courts. The order entered by the commission was even more favorable to appellant than it had the right to demand.

The order of the circuit court is affirmed.

*Order affirmed.*