(No. 15273.—Judgment affirmed.)

THE WEST SUBURBAN TRANSPORTATION COMPANY, Appellant, vs. THE CHICAGO AND WEST TOWNS RAILWAY COMPANY, Appellee.

*Opinion filed June 20, 1923.*

1. PUBLIC UTILITIES—*when appeal from decision of commission is proper to preserve question as to merits of the case.* Under section 68 of the Public Utilities act, providing that where no appeal is taken from the decision of the Commerce Commission the parties "shall be deemed to have waived the right to have the merits of said controversy reviewed by a court," an appeal from an order that a certificate of convenience and necessity shall issue upon compliance with certain conditions authorizes a review of the merits of the case, although no appeal is taken from the further order granting the certificate.

2. SAME—*Public Utilities act aims to protect public from destructive competition of carriers.* It is not the policy of the Public Utilities act to promote competition between common carriers as a means of providing service to the public, but by regulation of an established carrier occupying a given field the statute aims to protect the carrier from destructive competition, so that it may be able to serve the public more efficiently and at a more reasonable rate than could be obtained if other competing lines were authorized to serve the public in the same territory.

3. SAME—*State may regulate method of transportation established by private capital.* Methods for the transportation of persons, established and operated by private capital as an investment, are public utilities and subject to reasonable regulation by the State.

4. SAME—*power of Commerce Commission to establish rates of fare.* Rates of fare charged for carrier service are subject to regulation by the Commerce Commission within reasonable limits, but the commission has no power to make a rule regulating a utility which would amount to a confiscation of its property or require operation under conditions which would not provide a reasonable return upon the investment.

5. SAME—*orders of the commission must be reasonable—appeal.* The Commerce Commission has no arbitrary powers and its orders must be reasonable and lawful, and the question whether they are so or not is subject to review on appeal.

6. SAME—*what necessary to authorize establishment of bus line where suburban service is furnished by railways.* To authorize the

Commerce Commission to grant a bus line a certificate of convenience and necessity for the establishment of a route over the same suburban territory as is covered by an electric railway, it must be shown that the existing utility is not rendering adequate and convenient service and that the operation of the bus line will eliminate such inadequacy and inconvenience, and in determining such question the primary consideration is the convenience and necessity of the public as a whole and the matter of fares is not the only question to be considered.

7. SAME—*what is to be considered in determining necessity of new transportation facility.* Whether the public convenience and necessity require the establishment of a new transportation facility is not to be determined by the number of individuals who may ask for it, but the public must be concerned as distinguished from any number of individuals.

APPEAL from the Superior Court of Cook county; the Hon. EDWARD D. SHURTLEFF, Judge, presiding.

LEE D. MATHIAS, for appellant.

WILLARD M. McEWEN, and BERTHOLD L. GOLDBERG, for appellee.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

The West Suburban Transportation Company applied to the Illinois Commerce Commission for a certificate of convenience and necessity and authority to operate motor vehicles for the transportation of passengers and property in towns west of Chicago, called in this record the West Towns. The routes over which authority was sought to operate motor busses are described as follows:

"*Route 1.*—Beginning at Forty-eighth avenue and Twenty-second street, west on Twenty-second street to Oak Park avenue, south on Oak Park avenue to Ogden avenue, thence west on Ogden avenue to Hinsdale by way of Berwyn, Riverside, Lyons, Brookfield, Congress Park, LaGrange, LaGrange Park, Western Springs and Fullersburg.

"*Route 2.*—Beginning at Twenty-second street and Forty-eighth avenue, south to Ogden avenue, west on Ogden avenue to Hinsdale by way of Clyde, Berwyn, Riverside, Lyons, Brookfield, Congress Park, LaGrange, LaGrange Park, Western Springs and Fullersburg."

The Chicago and West Towns Railway Company has for several years operated a street railway system through most of the same towns for carrying passengers, and that transportation company resisted the application of the bus company for a certificate of convenience and necessity and authority to operate bus lines in the same territory. Applicant, the bus company, proposed to operate five motor vehicles on a fixed schedule at a definite rate of fare and receive and discharge passengers at any and all points along the route. The objection of the street railway company was that the bus lines were a duplication of its transportation system, and, in part, parallel its street railways on the same streets and would create competition between the two companies, using different means of conveyance. After a hearing the Commerce Commission on April 19, 1922, entered an order that the operation of the bus lines over the routes described was a convenience to the public and a necessary transportation facility, and the commission ordered that upon the bus company complying with certain conditions for the protection of the public a certificate of convenience and necessity issue. The street railway company appealed from that order to the superior court of Cook county, where, after a hearing, the order and decision of the Commerce Commission were reversed and set aside. From the judgment of the superior court the bus company has prosecuted this appeal to this court.

On June 21, 1922, the Commerce Commission made an order that appellant had complied with the conditions of the order of April 19, 1922, and granted the bus company a certificate of convenience and necessity and authority to operate its motor vehicles on the routes mentioned. No ap-

peal was prosecuted from the order of June 21, and appellant contends the superior court should have affirmed the order of April 19 or dismissed the appeal. This contention is based on the last clause of section 68 of the Public Utilities act, which provides that where no appeal is taken from the decision of the commission, the parties affected by the order and decision "shall be deemed to have waived the right to have the merits of said controversy reviewed by a court." The order of April 19 was entered after a hearing on the merits of appellant's petition for a certificate of convenience and necessity. The order of the commission was that the operation of the bus lines by appellant was a convenience to the public and a necessary transportation facility. The conditions imposed were that appellant file a copy of its certificate of incorporation, copy of chauffeurs' license, indemnity bonds and consents of villages, and the order further reads: "It is further ordered that unless the findings and order herein are strictly adhered to and fully complied with within twenty days from the date hereof the applicant shall discontinue operation." It seems clear the order and decision authorized the operation by appellant of motor vehicles, subject to discontinuance at the expiration of twenty days if the conditions named had not then been complied with. It was a decision on the merits of appellant's petition, and nothing further was left to be done except filing the proofs by appellant that it had complied with the conditions. We are of opinion that the superior court did not err in not dismissing the appeal.

Appellee has for many years maintained and operated through the West Towns west of Forty-eighth avenue, lines of street railway for the transportation of passengers. The Western Electric plant is situated on Forty-eighth avenue and extends south from Twenty-second street. It employs approximately 25,000 persons. The bus lines terminate at the Western Electric plant on the east. One of appellee's railway lines runs from that plant west on Twenty-second

street to Harlem avenue, then south to Twenty-sixth street, west and south through the north edge of Riverside and Brookfield, south through LaGrange Park, and terminates at Stone Avenue station, in LaGrange. The proof showed it carries on this line as many as .3600 passengers in one day and furnishes service approximately every twenty minutes. Another of appellee's lines runs from the Western Electric plant west on Twenty-fifth and Twenty-sixth streets to Ridgeland avenue, in Berwyn, then south and west to the line between Berwyn and Riverside, (which is Harlem avenue,) then south on Harlem avenue to Ogden avenue, and southwest along Ogden avenue into Lyons, where the line terminates. The proof shows that it carries as high as 6200 passengers a day on this line, with a schedule of a car from five to fifteen minutes. Appellee also operates a north and south line in Cicero, extending from Twenty-second street south to Thirty-sixth street, which is more than a mile south of Ogden avenue, over which the bus lines operate. Appellee also operates a line north on Forty-eighth avenue from Twenty-fifth street. With the exception of Western Springs, Hinsdale and Fullersburg both transportation lines operate through the same towns and are at no point more than a mile apart, but through approximately nine-tenths of the territory served by both transportation companies they are much nearer, and both lines are in the same street from Forty-eighth avenue to Oak Park avenue, a distance of about three miles.

If the transportation facilities furnished by appellee are so inadequate as to subject the public to inconvenience and the operation of appellant's bus lines would eliminate that inconvenience the order of the commission was authorized. It is not the policy of the Public Utilities act to promote competition between common carriers as a means of providing service to the public. The policy established by that act is, that through regulation of an established carrier occupying a given field and protecting it from competition it

may be able to serve the public more efficiently and at a more reasonable rate than would be the case if other competing lines were authorized to serve the public in the same territory. Methods for the transportation of persons are established and operated by private capital as an investment, but as they are public utilities the State has the right to regulate them and their charges, so long as such regulation is· reasonable. The policy of the Public Utilities act is that existing utilities shall receive a fair measure of protection against ruinous competition. Rates of fare charged for service are subject to regulation by the Commerce Commission within reasonable limits, but the commission has no power to make a rule or order regulating a utility which would amount to a confiscation of its property or require operation under conditions which would not provide a reasonable return upon the investment. Where one company can serve the public conveniently and efficiently it has been found from experience that to authorize a competing company to serve the same territory ultimately results in requiring the public to pay more for transportation, in order that both companies may receive a fair return on the money invested and the cost of operation.

The Chicago, Burlington and Quincy railroad runs southwest from the Western Electric plant through Cicero, Berwyn, Riverside, Brookfield, LaGrange, Western Springs and Hinsdale and performs a large part in the transportation of the public in those towns. It has fifteen stations between the Western Electric plant and Hinsdale,—a distance of about eight miles,—and runs from nineteen to thirty-four trains each way per day. This suburban service accommodates people desiring to go to points in the city of Chicago as well as persons desiring to stop at intervening stations between the Western Electric plant and Hinsdale. It does not appear that the public has ever made any complaint that the transportation service in the towns mentioned was inadequate or insufficient, and no proof was

offered on the hearing to that effect except the testimony of appellant's officers, and their testimony is not impressive. Only a comparatively small portion of the population of the West Towns would be more conveniently served by the operation of the bus lines. The Commerce Commission has no arbitrary powers. Its orders must be reasonable and lawful, and the question whether they are so or not is subject to review on appeal. (*Public Utilities Com.* v. *Toledo, St. Louis and Western Railroad Co.* 267 Ill. 93; *Chicago Bus Co.* v. *Chicago Stage Co.* 287 id. 320.) To authorize the Commerce Commission to grant appellant a certificate of convenience and necessity and authority to operate its lines to serve the same public already served by an existing utility, it was required that it be shown the existing utility was not rendering adequate and convenient service and that the operation of the bus lines would eliminate such inadequacy and inconvenience. In determining that question the primary consideration is the convenience and necessity of the public. (*Public Utilities Com.* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 288 Ill. 502.) Whether the public convenience and necessity require the establishment of a new transportation facility is not determined by the number of individuals who may ask for it. The public must be concerned as distinguished from any number of individuals. (*Public Utilities Com.* v. *Toledo, St. Louis and Western Railroad Co.* 286 Ill. 582.) Some individuals,—perhaps a considerable number,—would be convenienced by the operation of the bus lines, but it is clear from the record that to the great body of the public it would be neither a convenience nor necessity. It was not within the authority of the commission to authorize the operation of the bus lines for the convenience of a small part of the public already served by other utilities at no very great inconvenience. The order appealed from stated the bus company proposes to operate its transportation facilities at a lower rate of fare than the public is now paying,

and in appellant's brief it says the fare charged is five cents, but the order does not fix the rate of fare to be charged. Assuming appellant is limited to a five-cent fare and appellee is charging a larger rate, that was not, of itself, sufficient to authorize the order of the commission. The commission had authority to regulate the rate charged by the appellee, and if its fares were excessive to reduce them. Fares are not the only thing to be considered in a case of this kind. The public is interested and vitally concerned in adequate transportation facilities at reasonable rates and the State is interested in assisting to get them, but the State cannot, as we have said, require a carrier to furnish service at a rate which will not pay a fair return on the investment and cost of operation. We are not advised that any complaint had ever been made to the commission that appellee is charging excessive rates, and so far as this case is concerned we will assume it is not doing so. The effect of authorizing the operation of the bus lines at a lower fare to serve the same territory would be to decrease appellee's revenues, and if the rate it is now charging is a reasonable one, to require it to operate at a loss or increase its rate. This would be against the public interest, because appellant's lines cannot accommodate more than a comparatively small portion of the public in the matter of transportation.

The superior court found and adjudged that the order of the commission was against the manifest weight of the evidence heard, that the operation of the bus lines is not a convenience to the public and a necessary transportation facility, that the present transportation facilities are not inadequate and do not subject the public to inconveniences which will be eliminated by authorizing the operation of the bus lines, and that the order and decision of the commission are unreasonable. We are of opinion the decision of the superior court was right, and its judgment is affirmed.

*Judgment affirmed.*