The parties in this case are the same as the parties in the case of Chicago West Towns Railways, Inc. v. Illinois CommerceCom. 383 Ill. 20. The appellants are the same as the appellants in that case, and Bluebird Coach Lines, Inc., is the same appellee as in that case. The former case was reversed and remanded to the circuit court of Cook county "with directions to remand the cause to the Commerce Commission, with instructions to take such additional testimony and make such additional findings as may be necessary and proper to determine the issues raised by appellants, in conformity with the views expressed herein."
The issue raised in the former case was whether the Illinois Commerce Commission was justified in granting a certificate of convenience and necessity to the Blue Bird Coach Lines, Inc., and thus be allowed to invade the field of Chicago West Towns as a competing carrier before it had been shown that the existing carrier was unable to adequately serve the public in the manner found necessary or convenient by the Commerce Commission. We held that before a competing carrier could be allowed to invade the field of the one who was established in the field and rendering service, the latter must be shown to be unable to adequately perform the service as found necessary or convenient by the Commerce Commission.
Upon remandment considerable additional testimony was taken before the Commerce Commission and a number of findings made. It is unnecessary to consider all of *Page 462 
these findings. Findings Nos. 1, 2, 3, 4, 5, 6, 8, 10, 11 and 12 are all preliminary, and do not involve any issue in the case. Findings 13, 14 and 15 are descriptive of the lines of appellant Chicago Rapid Transit Company. Findings 17 to 29, inclusive, are identical with the findings 11, 12, 13, 14, 15, 16, 17, 18, 19, 22, 25, 27, and 28, contained in the first order of the commission, reviewed in 383 Ill. 20, and need not be again considered. Finding No. 30, involving the Chicago, Burlington 
Quincy Railroad Company, is not involved in this appeal. Findings 31 and 32 are descriptive of the service proposed by the petitioner, Bluebird Coach Lines, Inc. In fact, there is no substantial difference in the evidence or findings from those of the former hearing, except that findings 33 to 39, inclusive, describe the financial condition and operations of the appellant Chicago West Towns Railways, Inc. from 1936 until 1943. And findings 41, 42 and 43 disclose the reasons given by the Commerce Commission for its order holding Chicago West Towns is unable adequately and properly to perform the service proposed by Bluebird, allowing the appellee Bluebird Coach Lines, Inc., to operate as a competing carrier within the territory served by Chicago West Towns Railways and Chicago Rapid Transit Company. Finding No. 7 shows that the Bluebird conducts all of its carrier operations into the heart of the Chicago "Loop District," where it has terminal facilities. So, also, does Chicago West Towns, through transfer arrangement with Rapid Transit, authorized by a former order of the commission. (383 Ill. 20, 23.) Finding No. 9 makes a general finding that the appellants cannot render the service which can be rendered by the Bluebird, for reasons pointed out later, having specific reference to findings 33 to 39, inclusive.
Findings 33 to 39, inclusive, are descriptive of the financial operations of the Chicago West Towns since 1936 to the date of the hearing. The ultimate finding *Page 463 
made by the commission was that bonds would be due in 1947 in the aggregate amount of $2,939,867, and that the Chicago West Towns could not, during the two-and-one-half-year period, earn enough net profit to discharge and pay off these bonds, and that by reason of the financial condition the Chicago West Towns is unable to adequately and properly perform the service proposed by the petitioner. This does not constitute a finding that at the date of the order, viz., June 14, 1945, the Chicago West Towns was not able to render adequate service.
It is, of course, elementary that all of the facts passed upon and adjudicated upon the prior hearing of this case cannot be relitigated, and with that principle in mind we find that the only issue not settled in the former hearing is the financial ability of the Chicago West Towns to render a similar service to that which appellee Bluebird proposes to render.
The commission finds that during the year 1943 there was earned by Chicago West Towns a net profit of $278,773. The evidence in the record shows, without contradiction, although not specifically referred to in the findings of the commission, that for the full year 1943 Chicago West Towns had a net profit of $377,433. It shows West Towns had paid all arrears of interest accruing during 1937, amounting to over $637,000, and that at the time of the entry of the order it was able to pay interest on its indebtedness as it matured, and that in addition it had spent over a million dollars in the purchase of motor coaches, and still had a substantial surplus.
We have been referred to no authority which authorizes the Commerce Commission to anticipate that the finances of a public utility in the future will be in such condition that it cannot at the present time render service. The bonds of Chicago West Towns are not in default; no proof is present that efforts to refinance have been unsuccessful, nor in fact that anything, except a mortgage, will *Page 464 
shortly become due that current income will not pay. If this is held to be a good cause to deprive a utility of its right to priority in the field, the principle established by this court is seriously jeopardized.
Reference is made to the fact that stockholders have not received dividends, and that during the past years the company was in default on bond interest, but that does not prevent operation of a company through a receivership or reorganization proceedings, and in truth we take judicial notice of the fact that the transportation facilities of Cook county were in a hazardous financial situation for many years, but still continued to operate and render service.
It is to be noted there is no finding by the commission that Chicago West Towns has not available coaches of a character suitable to render the service proposed by Bluebird. Nor, so far as we can ascertain, is there a single impediment shown to its ability to render service, except the anticipated inability of Chicago West Towns to refinance its debts when the bonds become due. The approval of refinancing of a public utility corporation is one of the provinces of the Commerce Commission. No issue of that kind was presented in this hearing. We have no means of knowing what financial plans the company may have, nor what will be offered to the commission for approval, but we find no authority in the statute which authorizes the Illinois Commerce Commission, before an application has been made for the approval of its finances, as provided by sections 11 to 31, inclusive, of the Public Utilities Act, to pass upon this question in order to authorize a competitor to invade the field of an established utility.
There is nothing in the record, aside from this supposed inability at some time in the future to render service, which justifies the statement of the Commerce Commission that it is unable at the present time to render such service. In fact, this statement is at palpable variance with the facts. *Page 465 
Chicago West Towns has on hand the buses; it has additional buses ordered which will be available; it had a net profit of over $375,000 in 1943, and the testimony of the treasurer shows that at the last date of the hearing they had over $250,000 cash in the bank. We hold that the finding that Chicago West Towns is financially unable to furnish the service involved is against the manifest weight of the evidence, and not justified by law.
On behalf of appellants evidence was offered tending to show that the Chicago West Towns has all of the facilities to render the same or better service than is proposed to be rendered by the Bluebird, provided, of course, that the Commerce Commission authorizes it to have substantially the same terminal facilities in the "Loop District;" that Chicago West Towns renders a far more extensive service west from Chicago than does Bluebird, and that the territory proposed to be served by Bluebird would require not more than ten per cent of the equipment owned and used by Chicago West Towns; that the service proposed to be rendered by Bluebird is a bus service along the course described in our first opinion, which was an extension of the original Bluebird route to certain streets in Berwyn and Cicero, already served by buses of Chicago West Towns.
The evidence also tends to show that the Chicago West Towns owned, at the time the order of the Commerce Commission was made, one hundred seventy-nine buses of the latest type; that it had fifty more on order ready to be delivered; and, to take care of any emergency which might arise, that it had thirty buses in reserve; that it owned its own garages and paint shops, and was not dependent upon outside help to keep its equipment in shape; that the route involved between it and the Bluebird required the use of only ten buses, and that the service offered was at a lower rate than Bluebird, and that the same witnesses who testified on behalf of Bluebird were *Page 466 
willing to ride the Chicago West Towns if the latter was allowed by the commission to render the same service as that of Bluebird. The evidence shows the number of passengers handled by Chicago West Towns increased from 15,000,000 yearly in 1940 to 34,800,000 during the last year prior to the hearing. None of these facts seem to be refuted by other evidence, but there is no finding of the commission applying such facts to relevant issues, nor that the Chicago West Towns has not the equipment and the help to render the same service as that proposed to be rendered by Bluebird.
In our former opinion we said: "Upon the showing made in the record, the Commerce Commission was without authority to issue the certificate of convenience and necessity to the Bluebird line. Before it may do so it must be established that appellants, as pioneers in the field, are unable to adequately perform the service which may be found necessary or convenient by the Commerce Commission." There is in the present case no finding that appellants cannot render any additional service equivalent to that of Bluebird, if the commission so requires.
There is no finding that, aside from its supposed financial inability, West Towns cannot furnish the service which the commission deemed required by public convenience and necessity. There is likewise no finding that appellants cannot render to Cicero and Berwyn the same service proposed by Bluebird; nor any finding of the type of equipment required for such service; nor of the type or amount of equipment owned by appellants. The only finding pertaining to the ability of West Towns to perform such service is that relating to its supposed financial inability to render the service, which we have held is not conclusive.
We are of the opinion the findings should show the type of service to which these two communities are entitled; specific findings of fact as to the equipment owned by West Towns; its ability to procure the same; its suitability, *Page 467 
and its willingness to furnish the same, together with such other facts as to enable us to decide whether Bluebird does invade the field of West Towns, and whether West Towns is in a position to protect its field of service by ability to comply with all such present or additional requirements deemed necessary or convenient by the Commerce Commission.
Section 68 of the Public Utilities Act (Ill. Rev. Stat. 1945, chap. 111 2/3, par. 72,) among other things provides: "If it appears that the Commission failed to receive evidence properly proffered, on a hearing or a rehearing, of an application therefor, the court shall remand the case to the Commission with instructions to receive the testimony so proffered and rejected, and to enter a new order based upon the evidence theretofore, taken, and such new evidence as it is directed to receive, * * *." We gave such direction in our former opinion, but it has not been fully complied with.
 In Illinois Central Railroad Co. v. Franklin County, 387 Ill. 301, we said: "In reviewing an order of the commission, the courts are limited to a consideration of the questions of whether the commission acted within the scope of its authority, whether it made findings to support its decision, whether the findings and the decision have a substantial foundation in the evidence, and whether constitutional rights have been infringed by the decision. The statute does not authorize a court to put itself in the place of the commission and to determine independently the issues presented, or to substitute its judgment for that of the commission."
The statute requires the commission to make findings of fact upon the issues from the evidence in the case, which must be such as to enable a court to intelligently review the decision of the commission and ascertain whether the facts offered a reasonable basis for the order entered. (Fleming v. Illinois Commerce Com.388 Ill. 138; Rockwell *Page 468 Lime Co. v. Commerce Com. 373 Ill. 309.) As pointed out, evidence was received upon which the commission has made no findings. In view of the fact that the commission has not made findings of fact concerning the issues presented by the evidence in the record, the case will be remanded.
It follows that the judgment of the superior court of Cook county in affirming the order of the Commerce Commission was erroneous, and it is therefore reversed and the cause remanded, with directions to set aside said order and remand the cause to the commission to make findings based on the evidence and to enter an order not inconsistent with the views set forth herein.
Reversed and remanded, with directions.