(No. 30419.—

GULF TRANSPORT COMPANY, Appellee, *vs.* ILLINOIS COM-
MERCE COMMISSION *et al.*—(SOUTHERN BUS LINES,
INC., Appellant.)

*Opinion filed November 18, 1948—Rehearing denied Jan. 17, 1949.*

12

C. H. JENKINS, and HAROLD M. OLSEN, both of Springfield, for appellant.

WM. A. ROBERTS, (ROBERTS & McINNIS, of counsel,) both of Washington, D. C., for appellant on rehearing.

LOUIS F. GILLESPIE, of Springfield, (Y. D. LOTT, JR., PRIME F. OSBORN, and GILLESPIE, BURKE & GILLESPIE, of counsel,) for appellee.

Mr. CHIEF JUSTICE FULTON delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Randolph County vacating and setting aside the findings and order of the Illinois Commerce Commission granting

an amended certificate of convenience and necessity to the appellant herein, Southern Bus Lines, Inc.

The Southern Bus Lines, Inc., operates an intrastate and interstate bus service, the Illinois portion of which is operated from Cairo, Illinois, to East St. Louis, Illinois. The portion here involved extends from Chester, Illinois, to East St. Louis over Illinois Highway 3, which portion, up to this hearing, was operated by appellant with closed door restrictions from Chester to East St. Louis.

Gulf Transport Company, a subsidiary of the Gulf, Mobile and Ohio Railroad Company, and hereinafter referred to as appellee, also operates an interstate and intrastate bus service, the portion here involved also being over and along State Route 3 from Chester to East St. Louis.

Prior to 1941, the predecessor companies of the appellee in the area here involved operated the local service from Chester to Red Bud to East St. Louis, including the intermediate cities and villages. These predecessor companies also rendered local service between Red Bud and Belleville, on State Highway 159.

In August, 1941, the appellee purchased the operations of these predecessor companies and undertook to render the local service theretofore maintained by them except that it sold the rights from Red Bud to Belleville to the Reis Transport Company, which is not a party to this proceeding. The reason for such sale, as stated by the appellee at the hearing before the commission, was that the operation from Red Bud to Belleville did not enjoy sufficient traffic to warrant the continuance by Gulf of this operation.

At the time of the hearing before the commission, the appellants operated 7 round trips daily between Cairo, Illinois, and St. Louis, Missouri, passing through Chester, Red Bud, Waterloo and East St. Louis. These interstate routes could, under the restriction, pick up and discharge persons in the territory between Chester and Red Bud whose des-

tinations were beyond East St. Louis in Illinois or south of Chester.

The appellant filed two applications in this cause. In case No. 34202, it sought authority to operate from Red Bud on State Route No. 159 through Belleville to the junction with State Route No. 161, thence on State Route No. 161 to State Route No. 13 to East St. Louis, with restrictions against any local business between Belleville and East St. Louis. In case No. 34230, the appellant requested a modification of the restriction set up in the prior proceeding in case No. 28104, which prevented the appellant from transporting any passengers whose point of origin and destination was either Chester and East St. Louis or any points intermediate thereto on State bond issue Route No. 3, to allow the appellant to give local service between Chester and Red Bud and intermediate points, and to also allow it to serve persons originating at Chester or Red Bud and intermediate points to and from East St. Louis.

The two applications were consolidated for hearing and order. On January 21, 1947, the commission entered a single order granting the certificate requested in case No. 34202 and modifying the restriction as requested in case No. 34230.

The appellee filed a petition for rehearing with the Commerce Commission, which was denied and it then filed notice of appeal to the circuit court of Randolph County. On June 4, 1947, that court vacated and set aside the order of the Commerce Commission.

In its appeal to this court, the appellant contends that the circuit court of Randolph County erred in its order (1) in holding that the order of the Commerce Commission should be vacated and set aside; (2) in that it made no reference in its judgment and order to that portion of the order of the Commerce Commission granting the certificate of convenience and necessity to the appellant for the operation of busses between Red Bud, Belleville and

East St. Louis as requested in case No. 34202; (3) in holding that the record was not sufficient to warrant the commission granting the authority sought in the two applications; and (4) in holding that the law did not permit the Commerce Commission to enter the order and grant the authority. To support these contentions, the appellant argues (1) that it is also the carrier in the field; (2) that the law of the State of Illinois on the limited monopoly theory of utilities does not apply in a situation such as this, but that the Commerce Commission and the courts are governed by the demands of public convenience and necessity rather than the protection of one carrier as against the inroads of another; and (3) that the local route presently served by appellee is not on the main line operation of appellee, but rather is on the main line operation of appellant and that it should be allowed to give the requested service.

To rebut the contentions and arguments of the appellant, the appellee contended both here and in the court below that (1) the order of the Commerce Commission failed to make specific findings of fact which would support the conclusion that public convenience and necessity require the additional service ordered and that the order is, therefore, invalid; (2) the findings must be supported by competent evidence and that the record discloses no evidence as to public convenience and necessity requiring the granting of the certificate; (3) the appellee is the carrier in the field, holding a certificate of convenience and necessity for local service in the area involved and that before the Commerce Commission can authorize appellant to operate the same type of service it must find the existing service is inadequate; (4) the commission must also find that the appellee is unable to properly furnish service as required by the public before it can authorize the competing service; and (5) the appellant asquiesced in the order consolidating the two applications for hearing and order and cannot now

complain of an order vacating and setting aside the entire order of the commission.

The principles of law in force in this State, enunciated in the cases cited by both appellant and appellee, are firmly established and do not require long discussion. The basic theory underlying the appellant's allegations of error is that the limited monopoly theory is not designed to protect a carrier in the field to the prejudice of public convenience and need, and that public convenience and necessity, in the instant cause, require the granting of a certificate herein to the appellant. In support of this basic theory, the appellant cites *Commerce Com.* v. *Chicago Railways Co.* 362 Ill. 559; *City of Chicago* v. *Alton Railroad Co.* 355 Ill. 65; *Palmyra Telephone Co.* v. *Modesto Telephone Co.* 336 Ill. 158; *Chicago & West Towns Railways, Inc.* v. *Commerce Com.* 397 Ill. 460.

*Commerce Commission* v. *Chicago Railways Company* involved a citation order issued by the commission against the Chicago Railways Company and the United Motor Coach Company to show cause why the railway company should not be directed to install feeder busses to the city limits on Northwest Highway and Higgins Road. The United Motor Coach Company had been giving service in the territory prior to its incorporation within the city limits, and it was shown that persons, after said incorporation, still were required to ride the busses of United Motor Coach within the city to connection with the railway company and then pay an additional fare on the railway company facilities. The record indicated that persons living within the city of Chicago in this territory were deprived of the right of free transfer privileges available to persons living in other parts of Chicago. In affirming the order of the commission ordering the railway company to extend its service, we said that the protection of one utility under the limited monopoly theory was not designed for the benefit of the carrier alone, but for the benefit and convenience

of the public in general as well, and that the convenience and need of the public was of primary importance and was so contemplated by the legislature in the enactment of the Public Utilities Act. We then found that the record disclosed the convenience and necessity of the general public as required by the act and that in such a circumstance United Motor Coach could not take advantage of the limited monopoly theory. We further stated that there was no reason for the deprivation of the residents in this area of the rights accorded to other residents of the city of Chicago. It is to be noted that the case is distinguishable on the facts from the instant cause in that all the territory involved was within the city limits of the city of Chicago and that prior to the enlargement and extension of the city itself, the railways company was the carrier in the field within the city. The principle of law remains, however, that the public convenience and necessity is the primary concern of the Commerce Commission.

In *City of Chicago* v. *Alton Railroad Co.* 355 Ill. 65, the principle of this aforementioned case was approved in effect, as was done in the case of *Palmyra Telephone Co.* v. *Modesto Telephone Co.* 336 Ill. 158. It should be noted that in this latter case the utility in the field was given the protection sought.

The basic theories behind the contentions of the appellee are twofold. First, the appellee contends that the order of the commission does not contain sufficient findings to justify the grant of the authority given and that other findings found in the order express mere conclusions of the commission. It further contends that the argument of the appellant to the effect that the limited monopoly theory cannot apply here is not well taken in that no public convenience and need is disclosed by the record, and that even if public convenience and need require the institution of further service in the area appellee must be allowed to render it or that it must be shown that the existing service was

not adequate. To support its theories the appellee cites cases containing the doctrine of public utility law in this State. *Kewanee and Galva Railway Co.* v. *Illinois Commerce Com.* 340 Ill. 266, is cited for the rule of law that the Commerce Commission must make findings of fact upon the principal issues of the case and that such findings must be specific enough to enable the court to review intelligently the decision of the commission and ascertain if the facts on which the commission has based its order afford a reasonable basis for it. The law then provides that the findings· may then be re-examined in connection with the evidence to determine if they are substantially supported by the evidence. In that case the findings of the commission set forth that existing facilities were not adequate and not sufficient for the convenience and necessity of the public, and that the utilities then occupying the territory could not reasonably be required to provide the necessary frequency of service and that public convenience and necessity required the operation as proposed. We there held that these findings were not specific enough to enable the court to review them intelligently, and that the findings expressed a mere conclusion. To like effect is *Fleming* v. *Commerce Com.* 388 Ill. 138.

In *Roy* v. *Commerce Com. ex rel. North Shore Connecting Railroad,* 322 Ill. 452, we set forth a requirement often enunciated by this court to the effect that the convenience and necessity required to support an order of the commission is that of the public and not of any individual or number of individuals. In *Choate* v. *Commerce Com.* 309 Ill. 248, and in *West Suburban Transportation Co.* v. *Chicago and West Towns Railway Co.* 309 Ill. 87, this principle is stated.

In *Chicago & West Towns Railways, Inc.* v. *Commerce Com.* 397 Ill. 460, we stated "We are of the opinion the finding should show the type of service to which these two

communities are entitled; specific findings of fact as to the equipment owned by West Towns; its ability to procure the same; its suitability and its willingness to furnish the same, together with such other facts as to enable us to decide whether Bluebird does invade the field of West Towns and whether West Towns is in a position to protect its field of service by ability to comply with all such present or additional requirements deemed necessary or convenient by the Commerce Commission." We also quoted from the former opinion in the same case cited below, saying, "Upon the showing made in the record, the Commerce Commission was without authority to issue the certificate of convenience and necessity to the Bluebird line. Before it may do so, it must be established that appellants, as pioneers in the field, are unable to adequately perform the service which may be found necessary or convenient by the Commerce Commission." We also said, "There is in the present case no finding that appellants cannot render any additional service equivalent to that of Bluebird if the commission so requires. There is no finding that, aside from its supposed financial inability, West Towns cannot furnish the service which the commission deemed required by public convenience and necessity." To like effect are the cases of *Chicago & West Towns Railways, Inc.* v. *Commerce Com.* 383 Ill. 20, and *Egyptian Transportation System, Inc.* v. *Louisville and Nashville Railroad Co.* 321 Ill. 580.

In *Illinois Power & Light Corp.* v. *Commerce Com.* 320 Ill. 427, we again stated the rule regarding the theory of limited monopoly, saying that the basis for such policy is to provide the public with efficient service at a reasonable rate by compelling an established public utility, occupying a given field, to provide adequate service and at the same time to protect it from ruinous competition. If the company occupying the territory is incapable of providing ade-

quate service, then, and not until then, will a situation arise when the public convenience and necessity may require the establishment of another utility.

The question whether or not the order of the commission falls within the requirements of the cited cases of either the appellant or appellee requires an examination of the findings and order of the commission and the facts contained in the record which must support the findings. It is axiomatic under all of the established law relating to public utilities in this State that certain findings of fact must be made and that such findings must bear some reasonable relationship to the evidence in the record. It is not enough that any order of the commission contain all necessary findings of fact if there is no evidence in the record to support those findings or if the findings are against the weight of the evidence.

The order of the Commerce Commission herein contains 25 findings of fact, 1 to 14 of which set forth the jurisdiction of the commission and the facts already stated herein. These findings are preliminary and do not involve any of the issues of this cause.

Paragraph 15 sets forth that there are a large number of persons who desire more frequent schedules of service than those presently offered between Chester and Red Bud and who could be served locally by the applicant as an incident to its main line operation without additional expense or equipment other than that necessary to maintain the main line operation. Paragraph 15, taken alone, is not a finding of public convenience and necessity, and the further statement in the paragraph as to the ability of the applicant to render the service is not sufficient to overcome the theory of limited monopoly. The record discloses that a large number of persons residing in the territory here involved oppose the grant of authority to the appellant.

Paragraph 16 finds that there are not sufficient persons residing in the territory to support a strictly local operation

such as is conducted by the appellee in the territory between Chester and Red Bud, and that appellee is now maintaining as many schedules as can profitably be supported in such local operation. The paragraph further finds that to require more frequent schedules of service will require appellee to acquire and utilize more equipment and personnel to originate such schedules at Chester. It should first be stated that paragraph 16, in effect, denies that any further local service is needed in the area. If there are not sufficient persons residing in the territory to support a local operation, then we fail to see how more schedules can be required in this area. The uncontradicted testimony in the record is to the effect that if appellee loses the local business presently rendered by it, it will be required to curtail its 17 round trips daily between Waterloo and East St. Louis, inasmuch as 16 per cent of its total revenues in the area is derived from this operation. If such is the case, and there is nothing in the record to contradict the statement, this means that persons living in Waterloo will be deprived of certain services in the area. In *West Suburban Transportation Co.* v. *Chicago and West Towns Railway Co.* 309 Ill. 87, we said: "Whether the public convenience and necessity require the establishment of a new transportation facility is not determined by the number of individuals who may ask for it. The public must be concerned as distinguished from any number of individuals." Applying that principle here, we find that some few persons in the Chester-Red Bud area may be benefited by additional service in the area to the detriment of the persons living in the Waterloo region. This latter class are also a part of the general public and their needs and desires must be also considered by us. It is obvious, from a careful examination of the record, that the witnesses of the appellant were testifying as to their own individual convenience when they stated that they wished all of the transportation that they could get. It is further clear that many

of the persons so testifying for appellant would not be benefited to any great extent by the institution of the proposed service in that many of them wish public transportation to and from work and the schedules of neither of the parties hereto provided such transportation.

Paragraph 17 sets forth that there is no direct service between Chester and points intermediate to Chester and south of Red Bud to Belleville. We have been cited no authority, nor are we aware of any, which sets forth the requirement of direct service between any two points in this State where public convenience and necessity is being served in accordance with the limited monopoly theory through the use of transfers or the use of connecting transportation facilities, and we are not at liberty to place the additional requirement in the law of this State to the effect that direct transportation service is necessary in any area. It is a matter of judicial notice that transportation needs of large communities, as well as urban areas, have long been, and still are, adequately served through the use of connecting facilities at no great inconvenience to the general public.

Paragraph 18 discusses the Reis Transportation Company in its local service between Red Bud and Belleville and states that it is not financially able, nor does it have the necessary equipment and personnel, is delinquent in the filing of its reports, has not filed its annual reports nor paid its annual franchise tax and has failed to maintain regular schedules of service. The law provides the method by which the Commerce Commission can enforce its rules and regulations against the Reis Transportation Company, and the Commerce Commission has at its disposal full power to require the Reis Transportation Company to maintain schedules of service between the points and in the territory in which it holds a certificate. We have, again, not been cited any authority holding that the failure of one of several connecting transport companies to maintain

schedules is sufficient, standing alone, to justify the grant of a new certificate to a competing line.

Paragraphs 19 and 20 find that the appellee abandoned the operation between Red Bud and Belleville, experiencing a lack of demand for local service and that Southern Bus Lines could serve this territory on its main line operation as an alternate route, and that such service could be maintained without additional expense as an incident to its main line operation between Cairo and St. Louis, Missouri. The record indicates that such a line from Red Bud to East St. Louis through Belleville would allow the appellant herein to give local service between Red Bud and East St. Louis, to the detriment of the appellee and at no increase in cost to appellant.

Paragraph 21 finds that the appellee would not experience any ruinous competition or such competition as would affect the continuation of its service to the public because the authority sought is merely for the purpose of using the coaches which appellant now operates through this territory and that any person served through the modification of the restriction would be served only incidentally to its regularly scheduled interstate operation. We have already stated that the findings in the order of the Commerce Commission must be findings of fact based upon the evidence in the record. It is incumbent upon this court to examine the facts in connection with the evidence to determine if such findings are substantially supported by the evidence. (*Fleming* v. *Commerce Com.* 388 Ill. 138.) The only evidence in the record regarding ruinous competition was related by Mr. P. E. Geil, vice-president in charge of traffic of appellee. He stated unequivocally that 16 per cent of the total revenue on the St. Louis-Chester schedules came from the intrastate business in the area involved here. He further stated that any heavy inroads on the business of appellee in this area would require it to reduce the service given in the area and no clairvoyance is needed to under-

stand the plain fact that where two services are rendered in an area any business of the one must be taken from the other. This finding, therefore, is not supported by the evidence, but is contrary to the only evidence in the record on this point.

Paragraph 22 finds that there is not sufficient public demand for service in the territory between Red Bud and Chester to place in operation any additional schedules and that any additional schedules by appellee would not be sufficient to compensate it for the added cost for additional operation. We fail to see any consistency between this paragraph and paragraph 15 and paragraph 24, which provide that public convenience and necessity require the institution of the proposed motor carrier service. Further, there has long been in this State a requirement that the Commerce Commission must find specifically and, in fact, that public convenience and necessity require the institution of the proposed service. (*Kewanee and Galva Railway Co.* v. *Commerce Com. ex rel. Dohrn Transfer Co.* 340 Ill. 266.) Any finding that public convenience and necessity require the institution of the proposed service must certainly be denounced as a conclusion and not as a finding of fact where in the order there is already a finding that there is not sufficient demand for service in the territory to require additional schedules. It appears in the record that institution of the proposed service by the appellant would add a minimum of 7 round trips daily in the area involved. The appellee operates 7 round trips daily between Red Bud and St. Louis, which would make a total, if the certificate were allowed to stand, of 14 round trips daily between those communities. This total is reached in the face of a finding of the Commerce Commission that there is not sufficient public demand for service in the territory to require the placing in operation of any additional schedules.

It is obvious that the rules of law cited by the appellant cannot stand in the face of this record. To support the

order this court must find that, on the record, public convenience and necessity so strongly required the proposed service that the limited monopoly theory cannot be applied. We must further find under the law that the service of the appellee is inadequate and that it is not ready, willing and able to furnish such service as the commission finds is required. There is no showing in the order as to what service is required to satisfy the requirement of public convenience and necessity. A statement that public convenience and necessity require the institution of the proposed motor service is not sufficient, but only a conclusion under the law. *Kewanee and Galva Railway Co. v. Commerce Com.* 340 Ill. 266.

Even assuming for the purpose of discussion that the findings of the commission were not contradictory, as they are, and that they were supported by the evidence in the cause, there are other grounds for affirming the order of the circuit court. In *Chicago & West Towns Railways, Inc. v. Commerce Com.* 383 Ill. 20, and *Chicago & West Towns Railways, Inc. v. Commerce Com,* 397 Ill. 460, we itemized certain findings which must be set forth in the order of the commission before the territory of a carrier may be invaded by another carrier. In *Egyptian Transportation System v. Louisville and Nashville Railroad Co.* 321 Ill. 580, we said, "To authorize an order of the Commerce Commission granting a certificate of convenience and necessity to one carrier though another is in the field it is necessary that it appear first that the existing utility is not rendering adequate service." In the instant cause there is not one finding in the 25 findings in the commission's order which sets forth that the appellee is not rendering adequate service. In the *West Towns case,* we further cited *West Suburban Transportation Co. v. Chicago & West Towns Railway Co.* 309 Ill. 87, for the rule of law that it was necessary that the commission find that the operation of the applicant would eliminate such inade-

quacy and inconvenience. In the instant cause there is not one finding in the order of the commission that such would be the case. Again, in the *West Towns case* we pointed out that before the competing certificate may be granted it must be established that the pioneer in the field was unable to adequately perform the service which may be found necessary and convenient by the commission; that the pioneer in the field cannot render any additional service to meet that proposed; that it cannot furnish the service required by public convenience and necessity. The entire order in this cause in inconsistent with the. holdings in these cases.

An examination of the order of the Commerce Commission and the record in the cause discloses that finding 16, setting forth that there are not sufficient persons residing in the territory to support a strictly local operation, and finding 22 that there is not sufficient public demand for service in the territory as to require additional schedules, are borne out by the evidence. It is further clear from the record that appellee has continually stated itself willing, ready and able to furnish any further service which the commission deems necessary by the extension of some of its 17 Waterloo schedules through to Chester. Under these circumstances, we cannot find any support for the theory of appellant who seeks to override the theory of limited monopoly on the basis of great public convenience and demand. In connection with this, the record discloses that never has any complaint been made to the commission of the service of the appellee herein and that all requests of appellee for changes in schedule or increases in service have been complied with by the appellee.

The view we have taken herein is not inconsistent with the established law in this State. Our cases have consistently held that the method of regulation of public utilities in force in Illinois is based on the theory of regulated monopoly rather than competition. The principle behind

this theory is too well established to require further enunciation. The principal case relied on by appellant in support of its position and which constitutes an exception to the limited-monopoly theory is *Commerce Com.* v. *Chicago Railways Co.* 362 Ill. 559. This case is not in point. The overriding factor in that case was not public convenience and necessity standing alone. The other factors involved were (1) that persons residing within the city limits of the city of Chicago were deprived of certain rights and privileges with regard to transportation accorded to other persons living within the same city; (2) the extension of the city limits in effect made the railway company the carrier in the field in the new area, inasmuch as it was the carrier in the field in the city prior to the extension of the city limits. It is only in these rare and unusual cases that an exception to the limited monopoly will be allowed. In cases of the type before us, it is well established that the limited-monopoly theory will be enforced. This theory, founded on good reason and the sound policy of protection to the public, must not be abridged by the allowance of fierce competition.

The final portion of the arguments of the parties hereto involves the propriety of the circuit court in vacating and setting aside the entire order of the commission. The appellant contends that for the circuit court so to do was error in that there was evidence in the record to support the grant of authority to operate from Red Bud to Belleville. Appellant cites no cases but does set forth section 68 of the Public Utilities Act, (Ill. Rev. Stat. 1947, chap. 111⅔, par. 72,) which provides that no order of the commission shall be set aside unless it appears that the finding was against the weight of the evidence.

This argument is completely refuted by the law of this State as stated in the cases of appellee on this point. · Where the section of the act cited by appellant was directly concerned, we have held that, except in those cases where the

commission has refused to receive evidence properly proffered, the court on review must either confirm or set aside the order as a whole, since the invalidity of a part renders the entire order void. *Commerce Com.* v. *New York Central Railroad Co.* 398 Ill. 11.

The factual argument of appellant has no merit. It is apparent that to allow the service from Red Bud to Belleville to East St. Louis would be to allow competition from Red Bud to East St. Louis at, using the words of appellant, no increase in mileage. Further, we have already stated that the commission has the power and authority to compel Reis Transport to give the service for which it holds a certificate. The record is blank as to any showing that such an effort was made.

For the reasons stated herein, the judgment of the circuit court of Randolph County vacating and setting aside the order of the Commerce Commission is affirmed.

*Judgment affirmed.*